**STATE of Utah, Plaintiff and Appellee,**

v.

**Mark E. ANDERSON, Defendant and Appellant.**

No. 971426–CA.

Court of Appeals of Utah.

Dec. 24, 1998.

A.W. Lauritzen and Emily Lauritzen, Logan, for Appellant.

Jan Graham, Atty. Gen., and J. Frederic Voros, Jr., Asst. Atty. Gen., Salt Lake City, for Appellee.

Before WILKINS, Associate P.J., and BENCH and JACKSON, JJ.

## OPINION

BENCH, Judge:

Defendant appeals his conviction on fourteen counts of fraudulently obtaining controlled substances by prescription, a third degree felony, in violation of Utah Code Ann. § 58–37–8 (Supp.1993). Defendant claims that admitting the testimony of his doctors violated the physician-patient privilege. We affirm.

## BACKGROUND

The State charged defendant with twenty felony counts of fraudulently obtaining controlled substances by prescription. The information alleged that on various occasions between March and November of 1994, defendant fraudulently acquired the controlled substance Tussionex by failing to disclose he was receiving the substance from other sources. During the preliminary hearing, the State called each of the six physicians defendant had visited during the relevant period. Defendant did not object to the admissibility of the doctors' testimony or their records on grounds of physician-patient privilege. At the conclusion of the preliminary hearing, the court bound defendant over to stand trial on all counts.

Before trial, defendant filed a Motion in Limine requesting the trial court to suppress evidence under the physician-patient privilege found in Utah Code Ann. § 78–24–8 (1996) and Rule 506 of the Utah Rules of Evidence. The motion sought to exclude the records and testimony of defendant's various physicians. At the motion hearing, the State acknowledged that the physician-patient privilege provided by rule 506 applied to this case. The State asserted, however, that the physicians would not be asked to testify to any confidential communications by the patient to the physician. Furthermore, the State argued that defendant had waived the privilege because he never asserted it at the preliminary hearing. The State took the position that, by failing to assert the privilege at the preliminary hearing, the information to which the physicians would testify had already been disclosed.

The court found that the statutory privilege, Utah Code Ann. § 78–24–8, did not apply in this case because it was expressly limited to civil proceedings. The court also found that preventing any testimony from the various doctors would be inconsistent with Utah Code Ann. § 58–37–8, which criminalizes fraudulent acquisition of controlled substances by prescription through non-disclosure or misrepresentation. Therefore, the court ruled that the State could examine the physicians regarding whether they had prescribed a controlled substance to defendant,

whether defendant disclosed that another doctor had issued a prescription, whether this information would have caused the physician not to issue the prescription, and other "logical extensions" of those questions.

At trial, the six physicians that treated defendant all testified that, during the same relevant time period, they each prescribed the controlled substance Tussionex, and other controlled substances containing narcotics; that defendant did not tell them that he was receiving the same controlled substances from another doctor; and that they would not have issued the prescriptions if defendant had disclosed that information. In addition to the physicians' testimony, the State submitted the records from seven pharmacies to establish that defendant had obtained the prescribed narcotics. The jury convicted defendant on fourteen of the twenty counts charged.

## ANALYSIS

The physician-patient privilege never existed at common law.

> Under the common law a physician called to testify as a witness was competent to disclose any information required by, or communicated to, him in the course of his attendance upon, or treatment of his patient in a professional capacity, nor could the physician refuse to give, nor the patient by objection exclude, such testimony.

*State v. Dean,* 69 Utah 268, 272–73, 254 P. 142, 143 (1927). In Utah, as in many states, the common law has been modified, and the privilege is now recognized in both the Utah Code and the Utah Rules of Evidence. *See* Utah Code Ann. § 78–24–8(4) (1996); Utah R. Evid. 506.

■ Defendant argued below, and in his brief on appeal, that admitting the doctors' testimony violated the statutory physician-patient privilege found in Utah Code Ann. § 78–24–8(4). The trial court found that the statute did not apply in a criminal case. At oral argument before this court, defendant conceded that the statute, by its plain language, does not apply in a criminal case. We agree.

Section 78–24–8 provides, in pertinent part: "A physician or surgeon cannot, without the consent of his patient, be examined *in a civil action* as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." Utah Code Ann. § 78–24–8(4) (1996) (emphasis added). The plain language of the statute has remained unchanged since appearing in the Compiled Laws of Utah 1917, and explicitly limits its application to civil actions. Furthermore, the Utah Supreme Court has expressly held that this statute does not apply in criminal cases. *See Dean,* 254 P. at 143 (applying Comp. Laws 1917, § 7124, subd. 4, currently codified verbatim at § 78–24–8). The trial court therefore correctly ruled that permitting the doctors to testify at defendant's criminal trial did not violate the statutory physician-patient privilege as codified in section 78–24–8.

■ Defendant next argues that admitting the doctors' testimony violated the physician-patient privilege found in Rule 506 of the Utah Rules of Evidence. The State asserts that because defendant consulted the various doctors to fraudulently obtain controlled substances, his communications with those doctors are not protected by the privilege. "The existence of a privilege is a question of law for the court, which we review for correctness, giving no deference to the trial court's determination." *Price v. Armour,* 949 P.2d 1251, 1254 (Utah 1997).

Rule 506(b) states, in pertinent part:

> If the information is communicated in confidence and for the purpose of diagnosing or treating the patient, a patient has a privilege, during the patient's life, to refuse to disclose and to prevent any other person from disclosing (1) diagnoses made, treatment provided, or advice given, by a physician or mental health therapist, (2) information obtained by examination of the patient, and (3) information transmitted among a patient, a physician or mental health therapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or mental health therapist....

Utah R. Evid. 506(b). This privilege applies to both civil and criminal cases. *See* Utah R.

Evid. 506 advisory committee's note. The purpose of the privilege is to encourage the patient to make a full and complete disclosure to a physician in order to receive effective medical treatment, free from the embarrassment and invasion of privacy that might result from the physician's disclosure of the information. *See Clawson v. Walgreen Drug Co.*, 108 Utah 577, 600, 162 P.2d 759, 770 (1945) (Larson, C.J., concurring and dissenting); *McCormick's Handbook of the Law of Evidence* § 98, at 213 (Edward W. Cleary ed., 2d ed.1972).

The privilege is not absolute, however, and exceptions have been created. The rule itself expressly provides that no privilege exists when (1) the patient's physical or mental condition is an element of any claim or defense, (2) the patient is subject to proceedings for hospitalization for mental illness, or (3) the court orders the patient's examination. *See* Utah R. Evid. 506(d). Another exception to this privilege is found in section 58–37–6 of the Utah Code, which provides: "Any information communicated to any licensed practitioner in an attempt to unlawfully procure, or to procure the administration of, a controlled substance is not considered to be a privileged communication." Utah Code Ann. § 58–37–6(9) (1998); *see also* Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law* 5–14 (1996) (stating Utah Code Ann. § 58–37–6 provides exception "for statements made in an unlawful effort to procure drugs"). Although neither party on appeal cited this statutory exception, we believe it applies in this case.

The State has maintained throughout its prosecution of this case that defendant's motivation to visit the various doctors was to fraudulently obtain controlled substances. Each of the six doctors prescribed a narcotic to defendant, unaware that he was already receiving the same or similar narcotic from other doctors. Defendant's failure to disclose that he was already receiving prescribed narcotics from other doctors ultimately resulted in criminal charges being filed against him for violating Utah Code Ann. § 58–37–8. That section provides, in pertinent part: "It is unlawful for any person knowingly and intentionally: ... to obtain a prescription for ... any controlled substance by misrepresentation or failure by the person to disclose his receiving any controlled substance from another source." Utah Code Ann. § 58–37–8(3)(a)(ii) (Supp.1993). Because defendant's underlying purpose in consulting with multiple doctors for the same treatment was to unlawfully procure drugs, the statutory exception provided in section 58–37–6(9) "withholds the shield of privilege." *McCormick's Handbook of the Law of Evidence*, § 99, at 215.

Furthermore, defendant never disclosed to his doctors all the relevant information necessary for effective treatment. Defendant's deliberate failure to disclose information regarding the other prescribed narcotics to the treating physicians undermines the very purpose of the privilege, which is "to encourage and permit the patient freely to impart to the doctor any information which is necessary, or will be helpful, to the physician in prescribing or acting for the patient." *Clawson*, 162 P.2d at 770 (Larson, C.J., concurring and dissenting). Although defendant asserts he is using the privilege to shield his privacy, he is actually attempting to manipulate the privilege to protect his fraud. *See McCormick's Handbook of the Law of Evidence*, § 105, at 228. The information that defendant withheld from the physicians was not "communicated in confidence and for the purpose of diagnosing or treating the patient," and therefore does not fall within the scope of the privilege.

■ The State argues further that, even if the physician-patient privilege applied in some way, defendant waived the privilege by failing to object to the doctors' testimony at the preliminary hearing. The trial court ruled that defendant's failure to assert the privilege would waive the issue "as far as that hearing was concerned, but would not be effective at subsequent hearings." We conclude, however, that defendant waived the right to assert the privilege when he did not object to the doctors' testimony at the preliminary hearing.

The rationale for the physician-patient privilege is to protect confidential information made by the patient to his or her doctor for purposes of treatment. *See Clawson*, 162 P.2d at 763. The patient holds the privilege,

which he or she may claim or waive. *See McCormick's Handbook of the Law of Evidence,* § 102, at 218. Furthermore, if the patient "is in the position to claim [the privilege] and does not, it is waived." *Id.; see also* Kimball & Boyce, *supra,* at 5–15 ("Waiver also follows from failure to make timely objection.").

In *State v. Mincey,* 141 Ariz. 425, 687 P.2d 1180 , *cert. denied,* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984), the Arizona Supreme Court faced a similar privilege waiver issue. In that case, defendant asserted the physician-patient privilege to bar the testimony of his treating physicians at his third trial. *See id.* at 1194. In his previous trials, defendant waived the privilege when he did not object to the physicians' testimony. *See id.* The court held "that, once waived, whether at a former trial or otherwise, a patient cannot reassert his or her privilege." *Id.*

Similarly in this case, all six of defendant's doctors testified at the preliminary hearing without an objection from defendant on the ground of physician-patient privilege. Defendant was in a position to assert the privilege at the preliminary hearing and failed to do so. Once the doctors testified, any communication with the doctors that defendant sought to protect had already been disclosed on the record. It is undeniable that "the original disclosure takes away once and for all the confidentiality sought to be protected by the privilege. To enforce it thereafter is to seek to preserve a privacy which exists in legal fiction only." 8 John T. Wigmore, *Evidence in Trials at Common Law,* § 2389, at 860–61 (McNaughten rev.1961). " 'It is perfectly clear that once privileged material is disclosed, the privilege of non-disclosure is waived. It is equally clear that the waiver is irrevocable once a witness answers a question without claiming the privilege and [that the waiver] continues in effect for all subsequent proceedings.' " *Mincey,* 687 P.2d at 1195 (quoting *State v. Bishop,* 187 N.J.Super. 187, 453 A.2d 1365, 1368 (1982) (citations omitted)). We therefore hold that when defendant failed to assert the physician-patient privilege to prevent disclosure at the prelimi-

nary hearing, he waived the privilege and could not thereafter reassert it at trial.

## CONCLUSION

The trial court properly denied defendant's Motion in Limine because section 58–37–6(9) excludes from the physician-patient privilege any information communicated in an attempt to unlawfully procure drugs. Furthermore, defendant waived the privilege by failing to assert it when the doctors testified at the preliminary hearing.

Defendant's convictions are therefore affirmed.

MICHAEL J. WILKINS, Associate Presiding Judge, and NORMAN H. JACKSON, Judge, concur.