2006 UT 14

**Dr. Brian D. BURNS, Petitioner,**

v.

**The Honorable Ann BOYDEN, a judge in the Third Judicial District Court, State of Utah, Respondent.**

**State of Utah, Real Party in Interest.**

**No. 20050039.**

Supreme Court of Utah.

March 3, 2006.

---

Michael N. Martinez, Sarah Lynn Mathews, Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for respondent.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Daryl L. Bell, J. Denis Kroll, Jay Stone, Asst. Att'ys Gen., Salt Lake City, for real party in interest.

DURRANT, Justice:

¶ 1 This case presents two distinct issues: (1) whether Dr. Brian D. Burns may claim the physician-patient privilege as a shield against a state investigation into his allegedly fraudulent billing practices, and (2) whether a secrecy order obtained by the State respecting this investigation is constitutional. As to the first issue, rule 506 of the Utah Rules of Evidence provides a physician presumptive authority to claim the physician-patient privilege "on behalf of the patient." We hold that the State has rebutted this presumption by demonstrating that Burns is asserting the privilege not on behalf of his patients but for his own benefit. As to the second issue, Utah law allows the State, with approval and oversight from a district court, to conduct a criminal investigation in secret. Despite the secrecy order obtained by the State, Burns has adequate information about the investigation, and there are adequate procedural safeguards in place to effectively protect Burns's constitutional rights.

## BACKGROUND

¶ 2 The Workers' Compensation Fund filed a complaint with the Salt Lake County Attorney's Office in response to what it believed were fraudulent billing practices employed by the chiropractic clinics owned and operated by Burns. The complaint was subsequently referred to the Attorney General's Office, Department of Insurance, Fraud Division, which submitted an application to the district court for an order to open a formal investigation pursuant to the Subpoena Powers for Aid of Criminal Investigation and Grants of Immunity Act ("Subpoena Powers Act"), Utah Code Ann. §§ 77–22–1 to –5 (2003). The application included a statement of good cause setting forth the facts necessary to support the investigation and a request for an order of secrecy.

¶ 3 The Subpoena Powers Act provides that a district court may allow an order of secrecy upon a "reasonable likelihood that publicly releasing information ... would pose a threat of harm to a person or otherwise impede the investigation." *Id.* § 77–22–2(6)(a)(i). The Attorney General argued that secrecy was justified because "publicly releasing information about the identity of this witness or the substance of the evidence regarding patients, providers, medical billing and records ... would pose a threat of harm to a person or would otherwise impede the criminal investigation due to the potential confidential nature of some of the matters in question." The State specifically noted the following: (1) Burns was in litigation with a former employee, and other employee-witnesses feared that cooperation with the investigation would lead to their own litigation with Burns; (2) many witnesses were still employed by Burns, and the State wished to avoid communication between witnesses; and (3) the State wished to protect Burns's reputation pending criminal charges as well as the names of his patients.

¶ 4 The district court authorized both the investigation and the secrecy order. The secrecy order required that the occurrence of interrogations, the identity of those subpoenaed, the testimony records, and other subpoenaed evidence remain secret. The order further excluded everyone from investigative hearings except for the State's attorneys and their staff, others necessary to assist the investigative process, the court reporter, the witness, and the witness's attorneys. The secrecy order specifically permitted the disclosure of its own existence but did not expressly permit the disclosure of the application, good cause affidavit, or authorization

order. The secrecy order also permitted the Attorney General's Office to disclose information obtained during the investigation "for the purpose of furthering any official governmental investigation" or "when necessary for the State to comply with Utah Rule of Criminal Procedure 16 or any other obligation to disclose evidence to any such defendant before trial."

¶ 5 Subsequently, the State served Burns with a subpoena duces tecum, which sought the production of "[a]ll medical and billing records related to the treatment" of over 300 patients and ordered Burns to appear and give sworn testimony. Burns moved to quash the subpoena, arguing that (1) the subpoena duces tecum violated the physician-patient privilege, and (2) the secrecy order violated his due process rights. After a hearing, Judge Boyden denied the motion to quash, ruling that the physician-patient privilege did "not apply at this stage" and that the secrecy order did not violate Burns's due process rights. Burns subsequently produced the requested records and then filed the present motion for extraordinary relief to compel Judge Boyden to vacate her denial of the motion to quash. This court has jurisdiction under Utah Code section 78–2–2(2) (2002).

## STANDARD OF REVIEW

¶ 6 This case is before us on a petition requesting extraordinary relief. Such petitions are governed by rule 65B of the Utah Rules of Civil Procedure, which provides that extraordinary relief may be available "[w]here no other plain, speedy, and adequate remedy is available." Utah R. Civ. P. 65B(a). Burns claims that he is eligible for rule 65B relief because he is not statutorily entitled to an appeal from the denial of his motion to quash, and "an inferior court ... has exceeded its jurisdiction or abused its discretion." *Id.* 65(d)(2). Both the existence of a privilege and the application of constitutional protections are questions of law, so we afford no deference to the district court's conclusions. *Riddle v. Perry*, 2002 UT 10, ¶ 6, 40 P.3d 1128 ("[T]he existence of a privilege is a question of law ...." (internal quotation marks omitted)); *Chen v. Stewart,*

2004 UT 82, ¶ 25, 100 P.3d 1177 ("Constitutional issues ... are questions of law [reviewed] for correctness."). Ultimately, to determine whether rule 65B relief is appropriate, we must determine whether the district court made a mistake of law on either of these two questions that led it to abuse its discretion. *See State v. Barrett,* 2005 UT 88, ¶¶ 15–17, 127 P.3d 682.

## ANALYSIS

¶ 7 Burns raises two main issues in his petition for extraordinary relief: (1) whether he may claim the physician-patient privilege to prevent disclosure of patient records to the State in the investigation into his allegedly fraudulent billing practices, and (2) whether a secrecy order obtained by the State respecting this investigation is constitutional. We will discuss each of these issues in turn.

## I. BURNS MAY NOT CLAIM THE PHYSICIAN–PATIENT PRIVILEGE FOR HIS OWN BENEFIT

¶ 8 Burns argues that his patient records are protected from discovery under the physician-patient privilege. The district court held that the physician-patient privilege does not apply during a criminal investigation under the Subpoena Powers Act. The State now concedes that the privilege applies during such a criminal investigation but argues that there is an exception to the privilege where there are allegations of insurance fraud. We will address each of these arguments below, and then, because we hold that the physician-patient privilege applies to a criminal investigation under the Subpoena Powers Act and that there is no insurance fraud exception to the privilege, we will discuss whether the State has rebutted Burns's presumptive authority to claim the privilege.

¶ 9 Rule 506(b) of the Utah Rules of Evidence provides that a patient has a privilege to prevent disclosure of "diagnoses made, treatment provided, or advice given," as well as information obtained or disseminated as a result of an examination. Rule 506(c) specifies that the patient may claim the privilege and that the treating physician "is presumed to have authority ... to claim the privilege

on behalf of the patient." Utah R. Evid. 506(c).[1] Rule 506(d) delineates three explicit exceptions to the privilege. *Id.* 506(d). We will first discuss the district court's conclusion that the privilege does not apply during a criminal investigation under the Subpoena Powers Act. We will next discuss the State's claim that there is an exception to the physician-patient privilege in cases of suspected insurance fraud. We will then discuss whether the State successfully rebutted rule 506(c)'s presumption that a treating physician has authority to claim the privilege.

### A. The Physician–Patient Privilege Applies to a Criminal Investigation under the Subpoena Powers Act

¶ 10 In concluding that the physician-patient privilege does not apply at the investigation stage of this proceeding, the district court effectively concluded that the privilege does not apply during a criminal investigation under the Subpoena Powers Act. We disagree. The physician-patient privilege was not recognized at common law but has been adopted in Utah, first by statute and subsequently by rule. *See State v. Anderson,* 972 P.2d 86, 88 (Utah Ct.App. 1998). The purpose of the privilege is to promote full disclosure within a physician-patient relationship and thereby facilitate more effective treatment. *See Anderson,* 972 P.2d at 89; *Brillantes v. Superior Court,* 51 Cal.App.4th 323, 58 Cal.Rptr.2d 770, 778 (Ct. App.1996). The privilege serves to alleviate patients' fear that their medical records could be disclosed to the public and cause them embarrassment. *Anderson,* 972 P.2d at 89; *Brillantes,* 58 Cal.Rptr.2d at 778. We do not treat the policy underlying this privilege lightly and accordingly hold that rule 506 applies regardless of the stage of the proceedings.

¶ 11 Utah has had a statute providing for a physician-patient privilege in civil cases since before Utah became a state. *See, e.g.,* Compiled Laws of Utah tit. 11, ch. 1, § 382 (1876); Utah Rev. Stat. tit. 73, ch. 53, § 3414(4) (1898). The current version of the physician-patient privilege statute is codified as Utah Code section 78–24–8(4) (2002). As early as 1943, however, the Legislature delegated authority to the courts to make procedural and evidentiary rules. *See State v. Banner,* 717 P.2d 1325, 1333 (Utah 1986). Ultimately, a 1984 amendment to the Utah Constitution gave our court primary constitutional authority to promulgate procedural and evidentiary rules subject to the possibility of amendment by two-thirds absolute majority vote of the Legislature. Utah Const. art. VIII, § 4; Judicial Article Revision, § 4, 1984 (2d S.S.) Utah Laws 268, 269.

¶ 12 Consistent with that authority, in 1992, we adopted the physician-patient privilege contained in rule 506. *See* Edward L. Kimball & Ronald N. Boyce, *Utah Evidence Law,* at 5–144 (2d ed.2004). The advisory committee notes make clear that rule 506 "is intended to supersede Utah Code Ann. § [ ] 78–24–8(4)." Utah R. Evid. 506 advisory committee note; Utah R. Evid. 501 advisory committee note (stating that " § 78–24–8(4) . . . [is] made ineffectual by the adoption of [rule 506]"); *see also Debry v. Goates,* 2000 UT App 58, ¶ 24 n. 2, 999 P.2d 582 ("Thus, the statutory privilege has no further effect. Physician-patient and therapist-patient privileges are now exclusively controlled by Rule 506."). Thus, rule 506 controls our inquiry into the scope of the physician-patient privilege, and we need not consider Utah Code section 78–24–8(4).[2]

¶ 13 Having determined that rule 506 controls, we must now determine whether it applies during a criminal investigation under the Subpoena Powers Act. Contrary to the district court's findings, a privilege applies regardless of the "stage" of the proceedings. Although rule 1101 of the Utah Rules of Evidence sets forth a number of contexts where most of the rules of evidence do not apply, it expressly disavows any application

---

**1.** For purposes of this case, the State has stipulated that the physician-patient privilege applies to chiropractors.

**2.** To invoke Utah Code section 78–24–8(4) (2002), Burns argues that a criminal investigation under the Subpoena Powers Act is a civil proceeding. Because rule 506 supersedes section 78–25–8(4), and because rule 506 applies to both civil and criminal proceedings, we need not determine whether investigative proceedings are criminal or civil in nature.

to privileges. Utah R. Evid. 1101(b) ("The rules (other than with respect to privileges) do not apply in the [enumerated situations]."). Rule 104(a) also makes clear that, in deciding preliminary questions, a court must still respect valid privileges. *Id.* 104(a) ("In making its determination [the court] is not bound by the rules of evidence except those with respect to privileges."). Accordingly, subject to recognized exceptions and the rebuttable presumption discussed below, *see infra* Part I.C., the physician-patient privilege applies in a criminal investigation under the Subpoena Powers Act. Therefore, the district court erred in basing its refusal to apply the physician-patient privilege on the "stage" of the proceedings.

### B. Rule 506 Does Not Recognize an Insurance Fraud Exception

■ ¶ 14 Having determined that the physician-patient privilege applies in a criminal investigation under the Subpoena Powers Act, we now turn to the issue of whether rule 506 recognizes an exception for insurance fraud. The State argues that the Insurance Fraud Act, Utah Code Ann. §§ 31A–31–101 to –111 (2003 & Supp.2005), created a statutory exception to the privilege in cases where there is suspected insurance fraud. We disagree.

■ ¶ 15 It is true that the physician-patient privilege is not absolute. Rule 506 contains explicit exceptions where the patient's condition is an element of a claim or defense, where the proceeding regards whether hospitalization for mental illness is necessary, and where an examination is or-

dered by a court. Utah R. Evid. 506(d). Furthermore, at least one statute purports to act as an exception to the privilege, and other statutes require physicians to disclose otherwise-privileged information to law enforcement authorities.[3] Specifically, Utah Code section 58–37–6(9) (Supp.2005) states that "[a]ny information communicated to any licensed practitioner in an attempt to unlawfully procure, or to procure the administration of, a controlled substance is not considered to be a privileged communication." *See also Anderson*, 972 P.2d at 89 (holding by the court of appeals that section 58–37–6 creates an exception to the physician-patient privilege). Furthermore, other statutes require physicians to disclose otherwise-privileged information to law enforcement officials in instances where there is suspected child abuse, Utah Code Ann. § 62A–4a–403 (2000), or a weapon-related injury, *id.* §§ 26–23a–1 to –2 (1998).[4]

¶ 16 Given these apparent legislative inroads into the privilege, it is not surprising that the State argues for a statutory insurance fraud exception. The State bases its argument on Utah Code section 31A–31–104(1)(b) (2003), which requires "an insurer ... [to] release to [an] authorized agency ... information or evidence that is relevant to any suspected insurance fraud." But this provision applies only to "insurer[s]." *Id.* The State argues that, because insurance companies have complete access to patient records, this provision impliedly trumps the physician-patient privilege in cases of suspected insurance fraud.[5] The text of the

---

3. We have not previously addressed the issue of whether these or other procedural or evidentiary statutes are valid in light of article VIII, section 4 of the Utah Constitution. Article VIII, section 4 vests in the Utah Supreme Court both the authority and the duty to "adopt rules of procedure and evidence to be used in the courts of the state" and reserves to the Legislature only the authority to "amend the Rules of Procedure and Evidence adopted by the Supreme Court upon a vote of two-thirds of all members of both houses of the Legislature." Utah Const. art. VIII, § 4. As the constitutionality of these statutory encroachments on rule 506 is not before us, we do not decide it here.

4. We note without deciding that these reporting statutes, if effective, may not constitute complete

exceptions to the privilege rules because a patient may still be able to claim the privilege to prevent the physician from testifying in formal proceedings. *See* Kimball & Boyce, *supra* ¶ 12, at 5–159 n. 89 ("If a doctor ... learns ... of child abuse, he or she is under statutory obligation to report that.... However, when it comes time for trial, the[ ] [doctor] can be prevented from testifying by claim of privilege....").

5. If insurance companies have complete access to medical records, nothing precludes the State from subpoenaing records from the insurers, who would be required to release "information or evidence" under Utah Code section 31A–31–104 (2003).

statute, however, does not impose any direct duty on physicians to release privileged information, and we decline to insert such a substantive requirement by judicial fiat. *See Arredondo v. Avis Rent A Car Sys., Inc.,* 2001 UT 29, ¶ 12, 24 P.3d 928 (refusing to infer "substantive terms" into the text of a statute if they are "not already there"). Thus, the Insurance Fraud Act did not create a statutory exception to the physician-patient privilege.

■ ¶ 17 The State nevertheless argues that we should construe the physician-patient privilege narrowly to create an exception for investigations into suspected insurance fraud. We have previously noted that "[t]he effect of ... [a] privilege ... [is to] close another window to the light of truth." *State v. Gotfrey,* 598 P.2d 1325, 1327 (Utah 1979). Accordingly, the State argues that the privilege "should be strictly construed and applied." We agree that rule 506 should be strictly construed, but disagree that such strict construction can yield the State's desired insurance fraud exception.

■ ¶ 18 As discussed above, rule 506 contains only three explicit exceptions, none of which apply to this situation, and the Legislature has not affirmatively created any applicable statutory exception to the privilege. Furthermore, the advisory committee notes to rule 506 convince us that creating an exception for suspected insurance fraud would be inconsistent with the intended effect of the rule.[6] First, "[t]he Committee felt that exceptions to the privilege should be

specifically enumerated." Utah R. Evid. 506 advisory committee note. Second, "[t]he Committee ... endorsed the concept that in the area of exceptions, the rule should simply state that no privilege existed, rather than expressing the exception in terms of a 'waiver' of the privilege." *Id.* In light of these notes, a decision by us that "no privilege exist[s]" in cases of suspected insurance fraud could only be termed an "exception" to the privilege, and our creating such an exception would run directly counter to the intent that exceptions be "specifically enumerated." We therefore decline to create a blanket insurance fraud exception to the physician-patient privilege. This holding, however, does not end our inquiry; we must now determine whether Burns has authority to claim the privilege in this case.

## C. The State Rebutted Burns's Presumed Authority to Claim the Physician–Patient Privilege

■ ¶ 19 Although there is no blanket exception to the physician-patient privilege for suspected insurance fraud, evidence of such fraud has bearing on a physician's presumed authority to claim the privilege "on behalf of the patient." The plain language of rule 506 gives a treating physician presumptive authority to claim the privilege, not absolute authority. We interpret court rules, like statutes and administrative rules, according to their plain language. *See State v. Robertson,* 932 P.2d 1219, 1228 (Utah 1997), *overruled on other grounds by State v.*

---

6. There has been significant debate regarding what weight should be afforded advisory committee notes to judicial rules. *Compare* Eileen A. Scallen, *The Federal Rules of Evidence in Retrospect: Observations from the 1995 AALS Evidence Section: Interpreting the Federal Rules of Evidence: The Use and Abuse of the Advisory Committee Notes,* 28 Loy. L.A. L.Rev. 1283, 1287–93, 1302 (1995) (describing the advisory committee's and Congress's involvement in the adoption of the Federal Rules of Evidence, and arguing that committee notes should be given "great weight"), *and Tome v. United States,* 513 U.S. 150, 160, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (Kennedy, J., concurring) (arguing that the advisory committee notes are "particularly relevant" in determining the meaning of a rule and the intent of the drafters (internal quotation marks omitted)), *with id.* at 167–68, 115 S.Ct. 696 (Scalia, J., concurring) (conceding that the committee

notes are "ordinarily *the* most persuasive" scholarly commentary, but arguing that the notes are not "authoritative[ ]" because there is no "procedure by which [the Court] formally endorse[s] or disclaim[s] them"). We note that, although not authoritative, the advisory committee notes to the Utah Rules of Evidence merit great weight in any interpretation of those rules. Indeed, the primary argument against giving great weight to the notes—that the court does not "formally endorse them," *id.*—is of less concern under Utah law. Whereas, upon receiving proposed rules or amendments from the United States Supreme Court, Congress has the authority to modify or reject the rules, Scallen, *supra,* at 1288–90, we have primary constitutional authority to adopt these rules. Utah Const. art. VIII, § 4. Thus, the absence of the intervening legislative step makes the advisory committee notes a more reliable indicator of our intent in adopting the rules.

*Weeks,* 2002 UT 98, 61 P.3d 1000, *and State v. Reyes,* 2005 UT 33, 116 P.3d 305; *Archer v. Bd. of State Lands & Forestry,* 907 P.2d 1142, 1145 (Utah 1995). In our inquiry, we seek to give effect to the intent of the body that promulgated the rule. *See Wilcox v. CSX Corp.,* 2003 UT 21, ¶ 8, 70 P.3d 85. Rule 506(c) states that

> [t]he privilege may be claimed by the patient, or the guardian or conservator of the patient. The person who was the physician or mental health therapist at the time of the communication is *presumed* to have authority during the life of the patient to claim the privilege *on behalf of the patient.*

Utah R. Evid. 506(c) (emphasis added). Under this rule, the patient, the guardian, and the conservator have unequivocal rights to claim the privilege. *See id.* The physician, however, is only "presumed" to have the authority to claim the privilege "on behalf of the patient." *Id.* The rule's use of the word "presumed" denotes that there are instances outside the recognized exceptions where a physician lacks authority to claim the privilege. Or, in other words, the presumption is rebuttable. Otherwise, there would have been no reason for the drafters of the rule to include the word presumed. *See C.T. v. Johnson,* 1999 UT 35, ¶ 9, 977 P.2d 479 ("We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." (internal quotation marks omitted)).

¶ 20 Under the Utah Rules of Evidence, a presumption is an evidentiary mechanism where proof of certain "basic facts" will serve as proof of some "presumed fact" unless the presumption is rebutted. Kimball & Boyce, *supra* ¶ 12, at 3–51. To rebut a presumption, "the party against whom it is directed [bears] the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Utah R. Evid. 301(a).[7] Thus, to determine whether the State effectively rebutted the rule 506(c) presumption, we must first determine what basic and presumed facts are contemplated by that rule, and then determine whether the State met its burden in rebutting the presumed fact.

¶ 21 The basic facts necessary to trigger the rule 506(c) presumption are the same facts as those necessary for a patient to personally claim the privilege. Specifically, to trigger the presumption, a treating physician must prove that the information at issue was (1) "communicated in confidence," (2) to or from a physician or mental health therapist, and (3) "for the purpose of diagnosing or treating the patient." *Id.* 506(b). The presumed fact, however, is less clear. The rule states that the treating physician is presumed "to have authority . . . to claim the privilege." *Id.* Yet presuming authority would appear to presume a legal effect rather than a fact. In actuality, since a physician must prove all the basic facts to trigger the presumption that a patient would need to prove to claim the privilege, the only remaining fact for a physician to prove is that he is, in fact, claiming the privilege "on behalf of the patient" and not for his own benefit. *See id.* In sum, the "presumed fact" under rule 506(c) is that the physician is claiming the privilege on behalf of the patient.[8] Thus, to defeat a physician's ability to claim a privilege once the physician has proven all the basic facts, a party needs to prove "that the nonexistence of [a physician's intent to claim the privilege for the patient's benefit] is more probable than its existence." *Id.* 301(a). In other words, to rebut the physician's authority, the challenging party must show that it is more likely than not that a physician is claiming the privilege in his own self-interest. The State has met that burden in this case.

¶ 22 We assume for purposes of our analysis that Burns adequately proved the basic facts as described above and focus our inquiry on Burns's intent in claiming the privilege.

---

7. Rule 301 applies to "all civil actions and proceedings not otherwise provided for by statute or by these rules." Utah R. Evid. 301. Although it is unclear whether a criminal investigation under the Subpoena Powers Act is a "civil action[ ]," the Subpoena Powers Act does not address how presumptions should be treated, and we can find no other rule or statute that would prevent application of rule 301.

8. This interpretation is further supported by the rule's provision that a treating physician may claim the privilege only "during the life of the patient." Utah R. Evid. 506(c).

The State has consistently argued that Burns is claiming the privilege not to protect his patients, but rather, to shield himself from the criminal investigation. The record supports this conclusion. The only person who stood to benefit from quashing the subpoena was Burns because the secrecy order was in place to protect the patients. In fact, the most compelling evidence against Burns's presumed selfless intent is that he has consistently attacked the secrecy order—the main barrier preventing public disclosure of the patient information already in the record. The facts in this case are similar to those in *Brillantes*, where the California Court of Appeals noted that "an attempt by a physician accused of [insurance] fraud to invoke this privilege on behalf of his patients, would serve to benefit only the physician, to the patient's detriment." 58 Cal.Rptr.2d at 778. While it is true that insurance companies are the primary victim of fraudulent billing practices, allowing a physician to shield those practices by claiming the physician-patient privilege injures the patients and the population at large by potentially causing an increase in insurance premiums. *Cf. Eaquinta v. Allstate Ins. Co.*, 2005 UT 78, ¶ 13, 125 P.3d 901 (recognizing that increasing an insurance company's expenditures can cause premiums to increase). Moreover, allowing physicians to shield their fraud through the privilege relegates the patients to tools in perpetuating the fraud. Ultimately, the benefit of allowing Burns to claim the privilege—protecting patient records from public disclosure—can be achieved through other methods. The detriment to the patients remains, however, so long as Burns can use the privilege to hinder the investigation. Therefore, where it is clear from the record that Burns is claiming the privilege to shield himself from investigation rather than to protect his patients' interests, the State has met its rebuttal burden, and Burns lacks authority to claim the physician-patient privilege under rule 506.

¶ 23 In holding that Burns lacks authority to claim the physician-patient privilege, we do not leave the patients' privacy interests unprotected. Initially, it is doubtful that patients have any expectation that the privilege would shield their records from law enforcement officials in a case like this. *See Reynaud v. Superior Court*, 138 Cal.App.3d 1, 187 Cal.Rptr. 660, 666–67 (Ct.App.1982). Patients generally expect that an insurance company has access to patient records to protect its interests. Furthermore, if there is suspected fraud, patients would expect that their insurance company could assist law enforcement to respond to that activity, and, in fact, Utah Code section 31A–31–104(1)(b) (2005) requires an insurer to do so.

¶ 24 While patients likely do not expect their records to remain confidential from authorities in investigations of fraud, they do expect their records to remain confidential from the general public. The physician-patient privilege is perhaps the first line of defense in keeping patient records out of the public eye, but it is by no means the only defense. A secrecy order, such as the one in this case, represents one possible protection against public disclosure.

¶ 25 Burns focuses, however, only on the first line of defense and argues that we must uphold the privilege in his case because he is ethically bound to withhold his patient records from the State. Burns thus argues that Judge Boyden's order puts him in a catch–22 situation, in that he violates the law whether or not he complies with the subpoena. Burns misapprehends his professional duty under Utah Code section 58–73–501(12) (2002). That section provides that "willfully betraying or disclosing a professional confidence or violation of a privileged communication" can be punished as "[u]nprofessional conduct." *Id.* § 58–73–501. But there is an exception to this rule when disclosure is "required by law." *Id.* § 58–73–501(12)(a). In this case, the court-approved subpoena served on Burns has the force of law, so compliance with the subpoena would be excepted from the definition of unprofessional conduct under section 58–73–501.

¶ 26 Nevertheless, our opinion in this case should not dissuade physicians from zealously guarding their patients' confidences. Rather, we merely recognize that, in instances where a physician seeks to claim the physician-patient privilege to serve his or her own interest rather than the patient's, a

court may find that the physician lacks authority to do so. In those cases, the burden of protecting private medical records from public disclosure falls on the district court and law enforcement officials. The district court, in particular, should not order a physician to disclose confidential medical records without first taking measures to protect the records from public disclosure. In this case, the district court entered a secrecy order to protect against public disclosure.

¶ 27 In sum, we deny Burns's petition for extraordinary relief because Judge Boyden properly denied Burns's motion to quash the subpoena. The State rebutted Burns's presumed authority to claim the physician-patient privilege by showing that it was more likely than not that Burns claimed the privilege for his own benefit rather than on behalf of his patients. Moreover, there remains adequate protection from public disclosure of Burns's patient records. Having determined that Burns lacks authority to claim the privilege in this case, we now discuss the constitutionality of the secrecy order.

## II. THE SECRECY ORDER DOES NOT VIOLATE BURNS'S CONSTITUTIONAL RIGHTS

■■■ ¶ 28 Burns's second claim is that the secrecy order covering the criminal investigation deprives him of his ability to effectively claim the physician-patient privilege or to effectively assert his constitutional due process rights. As discussed above, Burns lacks authority to claim the privilege in this case, so we need not consider the secrecy order's effect on that authority. Further, Burns has not been denied any of his due process rights because he has abundant knowledge about the subject matter of the investigation and because the procedures set forth in the Subpoena Powers Act are sufficient to protect those rights.

¶ 29 Burns argues that his due process rights have been violated because the secrecy order prevents him from effectively asserting his Fourth and Fifth Amendment rights. Specifically, Burns argues that the subpoena constitutes an unreasonable search under the Fourth Amendment because the secrecy order prevents him from intelligently asserting

his rights to challenge the subpoena. He argues that the secrecy order violates the Fifth Amendment by preventing him from intelligently asserting his privilege against self-incrimination because he lacks enough background information to know what evidence will be incriminating. Burns also argues that he did not receive due process because the district court impermissibly shifted to him the burden of persuasion to show that the secrecy order was not necessary.

¶ 30 As to the first two arguments, although Burns claims to not know what the allegations are or what is relevant or incriminating, in fact, he has detailed information about both the potential charges against him and the scope of the investigation. Specifically, he has access to the Insurance Fraud Division's initial investigation for the Attorney General's Office. Burns admits that the report is a public document and that it includes names of witnesses, and further, the State claims to have provided him with a copy of the report. Burns also received a copy of the State's response to his motion to quash the subpoena. The response included a detailed background of the allegations made by Workers' Compensation, the investigation by the Insurance Fraud Division, the State's reason for requesting the secrecy order, and the State's contention based on a preliminary investigation that "Brian Burns has submitted or instructed his employees to submit insurance claims to several health care insurance providers under the names of various medical doctors who have not actually treated the patients." It further accuses Burns of ordering MRIs and EMGs, which a chiropractor cannot be reimbursed for, under the names of physicians who never treated the patients. These sources adequately inform Burns of both the allegations against him and the information sought by the State in pursuing those claims. Thus, Burns has sufficient information to effectively assert his Fourth and Fifth Amendment rights.

■■■ ¶ 31 In addition to Burns actually having sufficient knowledge to assert his rights, we believe that the procedural protections found in the Subpoena Powers Act are adequate to protect Burns's rights. First,

the Fourth Amendment is satisfied because Burns received judicial review of the subpoena before he was required to comply with it. The Fourth Amendment provides that "[t]he right of the people to be secure ... against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. We noted in *In re Criminal Investigation* that "[t]he fourth amendment is satisfied if the subpoenaed party is allowed 'to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court.'" 754 P.2d 633, 642 (Utah 1988) (quoting *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S.Ct. 769, 78 L.Ed.2d 567 (1984)). We also found in that case that such review is generally available in the court that issued the subpoena. *See id.* at 642–43. There is no question that Burns obtained precompliance review before the district court through his motion to quash. Thus, Burns's claim that the secrecy order deprived him of his Fourth Amendment rights lacks merit.

▆ ¶ 32 Second, the pre-interrogation disclosures required by the Subpoena Powers Act alleviate any Fifth Amendment concern. The Fifth Amendment provides that "[n]o person ... shall be compelled ... to be a witness against himself." U.S. Const. amend. V. In *In re Criminal Investigation*, we set forth the minimum procedural safeguards necessary to conduct a criminal investigation under the Subpoena Powers Act without running afoul of the Fifth Amendment. 754 P.2d at 648–49. The Legislature subsequently amended the Subpoena Powers Act to expressly require those procedural safeguards. Utah Code Ann. § 77–22–2(5) (2003). The current version of the Subpoena Powers Act requires the prosecutor to inform the witness

(i) of the general subject matter of the investigation;

(ii) of the privilege to, at any time during the proceeding, refuse to answer any question or produce any evidence of a communicative nature that may result in self-incrimination;

(iii) that any information provided may be used against the witness in a subsequent criminal proceeding; and

(iv) of the right to have counsel present.

*Id.* § 77–22–2(5)(a). And if the witness is a target of the investigation, the prosecutor must also inform the witness of his "target status" and "the nature of the charges under consideration against [him]." *Id.* § 77–22–2(5)(b). Burns does not claim that the State has failed to comply with the statute. Rather, he argues that *In re Criminal Investigation* found the secrecy provision of the Subpoena Powers Act constitutional only because "the application, good cause affidavit, and authorization order may not be kept secret." 754 P.2d at 656. While *In re Criminal Investigation* held that the public nature of those records defeated the constitutional claims at issue in that case, it did not hold the converse-that keeping those records secret is per se unconstitutional.[9] *Id.* We hold that, even if a secrecy order covers these documents, the procedural safeguards found in the Subpoena Powers Act are sufficient to protect a witness's Fifth Amendment rights because, before a witness is required to testify or produce any communicative evidence, the prosecutor must inform him of his right to claim the privilege, the subject matter of the investigation, his target status, and the nature of the potential charges against him.

9. Although we found that the secrecy order in *In re Criminal Investigation* was "applied too broadly," we based this holding on legislative intent, not constitutional restraint. 754 P.2d 633, 659 (Utah 1988). We did note in dicta, however, that, "to the extent that the concealment of the good cause statement impeded the challenge of subpoenas or interrogations, it operated to deny rights against unreasonable search and seizure." *Id.* In essence, where no disclosure was made, *and* where all informative documents were kept secret, a witness had no way to challenge a subpoena. Thus, removing either the lack of disclosure or the secrecy of pertinent documents would ameliorate the Fourth Amendment concern. The Legislature has since determined that pre-interrogation disclosure is the preferred method of protecting those rights. *See* Utah Code Ann. § 77–22–2(5) (2003). As discussed in the text, we reaffirm that the disclosures required by both *In re Criminal Investigation* and the current statute effectively ensure the availability of precompliance review of a subpoena, and thus ameliorates the Fourth Amendment concern we expressed in that case.

¶ 33 As to Burns's final argument, that the district court impermissibly shifted to him the burden of persuasion for imposing the secrecy order, we hold that there was no denial of due process because there is scant evidence that any shifting occurred. Burns's argument is based solely on the district court's finding that "[t]he basis for issuance of the Secrecy Order was based on a valid concern and this Court is not persuaded no threats occurred." The State readily accepted both in this proceeding and in the district court that it had the burden of persuading the court that a secrecy order was necessary. *See Kearns–Tribune Corp. v. Wilkinson*, 946 P.2d 372, 376–77 (Utah 1997). Where the State accepted its burden in the district court, the disputed finding merely recognizes that the State satisfied its burden and that Burns's attempt to undermine the State's evidence was unsuccessful. We therefore deny each of Burns's constitutional challenges to the secrecy order.

## CONCLUSION

¶ 34 Although the district court erred in concluding that the physician-patient privilege does not apply in an investigation under the Subpoena Powers Act, we decline to grant extraordinary relief because our review of rule 506 of the Utah Rules of Evidence and the record in this case convince us that the State effectively rebutted Burns's presumed authority to claim the privilege in this case. It is apparent from the record that Burns actually sought to claim the privilege for his own benefit and in derogation of his patients' interests.

¶ 35 Furthermore, the secrecy order regarding the criminal investigation at issue does not deprive Burns of any constitutional right because Burns has abundant knowledge regarding the potential charges against him, and because the Subpoena Powers Act requires pre-interrogation disclosure of all information necessary to protect a witness's constitutional rights. We accordingly deny Burns's rule 65B motion for extraordinary relief.

¶ 36 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.