**2013 UT App 162**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF P.D., A PERSON
UNDER EIGHTEEN YEARS OF AGE.

E.D.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20120227-CA
Filed June 27, 2013

Third District Juvenile, Summit Department
The Honorable Mark W. May
No. 1046790

Gail E. Laser, Attorney for Appellant
John E. Swallow and John M. Peterson, Attorneys
for Appellee
Martha Pierce, Attorney for Guardian Ad Litem

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JAMES Z. DAVIS and WILLIAM A. THORNE JR. concurred.

ORME, Judge:

¶1 Appellant E.D. (Father) appeals an order from the juvenile court that awarded full custody and guardianship of their son to Mother. Father argues that he was improperly denied an evidentiary hearing as required by rule 47 of the Utah Rules of Juvenile Procedure. We agree with Father, but we decline to reverse because Father has failed to meet his burden to show that the error was harmful.

BACKGROUND

¶2 Following their divorce in 2008, Father and Mother shared custody of their son, P.D. In January 2011, allegations of abuse were brought against Father, and an ex parte petition for a protective order was filed. The juvenile court entered a protective order, and Mother was temporarily given full physical custody. Following an investigation, no prosecution was initiated by police and the Division of Child and Family Services (DCFS) substantiated only some of the allegations. In August 2011, however, Father entered a plea under rule 34(e) of the Utah Rules of Juvenile Procedure by which he "declin[ed] to admit or deny the allegations." *See* Utah R. Juv. P. 34(e). When a plea is entered under rule 34(e), "[a]llegations not specifically denied by a respondent shall be deemed true," *id.*, and Father was made aware that by entering a rule 34(e) plea he was waiving his right to a trial on those allegations.

¶3 The allegations to which Father entered a rule 34(e) plea included spanking P.D.'s bare buttocks, requiring P.D. to sleep with him while Father slept in the nude, requiring P.D. to touch Father's genitals while Father watched pornographic material, calling P.D. names like "jerk off" and "asshole," and grabbing P.D. by the neck and holding him against a wall until P.D. urinated. In early September, the juvenile court adjudicated Father to have abused P.D., and, while the previously entered protective order was dismissed, the grant of physical custody to Mother as well as restrictions on Father's visitation time were continued in effect. A November order ratified this arrangement.

¶4 The next hearing was held in February 2012. The juvenile court permitted portions of a report from P.D.'s Court-Appointed Special Advocate (CASA volunteer) to be read aloud. The report stated that P.D. "just wants to move forward in his life and not be forced to see his father so frequently." The report also indicated that P.D. felt uncomfortable around his father and that the CASA volunteer believed "the Court should not force this relationship

until the father gets some psychological help." The court reviewed the summary of a psychosexual evaluation, which had only recently been completed by Father, that concluded that Father continued to deny the occurrence of any abuse. The court then indicated that it would grant full custody of P.D. to Mother. Previous orders for family therapy were vacated, and Father was allowed one hour per week of supervised visitation. Future contact between Father and P.D. was to be determined by P.D.'s therapist. The court requested Mother's attorney to prepare an order implementing these dispositions. Upon hearing this, Father's counsel requested an evidentiary hearing under rule 47 of the Utah Rules of Juvenile Procedure. The court denied the motion saying, "I don't believe you're entitled to that."

## ISSUE AND STANDARD OF REVIEW

¶5 Father appeals the juvenile court's denial of the requested evidentiary hearing, insisting that he was entitled to one by the express terms of rule 47 of the Utah Rules of Juvenile Procedure. "[T]his court generally reviews interpretations of rules for correctness." *In re Fox*, 2004 UT 20, ¶ 5, 89 P.3d 127.

## ANALYSIS

¶6 Rule 47 of the Utah Rules of Juvenile Procedure provides:

> The court shall not modify a prior order in a review hearing that would further restrict the rights of the parent, guardian, custodian or minor if the modification is objected to by any party prior to *or in* the review hearing. The court shall schedule the case for an evidentiary hearing and require that a motion for modification be filed with notice to all parties in accordance with Section 78A-6-1103.

Utah R. Juv. P. 47(b)(3) (emphasis added). Father characterizes as timely the objection he made *in*, albeit at the end of, the review hearing where custody of his son was permanently granted to Mother.[1] He argues that he was therefore entitled to the benefit of an evidentiary hearing before any modification was made to P.D.'s custody arrangements. The Guardian Ad Litem argues that rule 47 does not apply to this hearing because Father's rights were not further restricted as a result of the hearing. The State argues that failure to grant such a hearing was harmless error. We review each of these arguments in turn.

## I. Father's Objection Was Timely.

¶7    Father argues that the juvenile court erred in denying his request for an evidentiary hearing because his objection was timely given the language of rule 47. Under the rule, an evidentiary hearing must be granted if objection is made "prior to or in the review hearing." Utah R. Juv. P. 47(b)(3). Rule 47, however, does not provide any specific guidance as to when a party would have to make an objection in order for it to qualify as having been made "in the review hearing." *Id.* "We interpret court rules, like statutes and administrative rules, according to their plain language." *Burns v. Boyden*, 2006 UT 14, ¶ 19, 133 P.3d 370. Because the plain

---

[1] The State argues that this was not a "review hearing" but was instead a "final dispositional review" and that rule 47 does not apply in this case. Whether this was a review hearing, as argued by Father, or a final dispositional review, as argued by the State, we see no language in the rule leading us to believe that the requirement in rule 47(b)(3) would not be applicable in either situation. In other words, even if this had been a dispositional hearing governed by rule 47(c) as the State suggests, we see no language exempting it from rule 47(b)(3)'s mandate to grant an evidentiary hearing upon demand. If anything, this mandate is even more important in a dispositional review hearing than in a routine review hearing.

language of the rule permits the objection to be made "in" the review hearing, it rather clearly allows the objection to be made at any time before the hearing ends. Thus, Father's objection was timely.

¶8     That said, we concede that it is quite odd that a party could wait as long as Father did here and still be allowed to interpose his objection and trigger his entitlement to an evidentiary hearing. Essentially, Father was permitted to participate in a non-evidentiary hearing, see which way the wind was blowing, and then make his request at the eleventh hour—indeed, after the juvenile judge had already directed Mother's attorney to prepare the implementing order, just prior to adjourning the hearing. This is not a format that enhances orderly process, and it may well be that the rule is in need of revision. Nevertheless, we must conclude that Father's objection was made "in the review hearing" and that he was therefore entitled to the requested evidentiary hearing.

## II. Father's Rights Were Modified.

¶9     The Guardian Ad Litem argues that rule 47 should not apply because Father's rights were not further restricted or substantially changed at the hearing in question. Rule 47 mandates an evidentiary hearing only in cases where the rights of a party are "further restrict[ed]." Utah R. Juv. P. 47(b)(3). The Guardian contends that P.D. was already in Mother's full custody per the November 2011 order and so the only substantive changes made to Father's rights were that he was granted one hour of supervised visitation and that an order for family therapy was vacated. The Guardian goes so far as to argue that Father's rights were actually broadened as a result of the hearing because of the grant of additional visitation. We disagree.

¶10     While the practical effect of the February 2012 order was merely to continue the custody arrangement ordered in November 2011, Father's rights were still significantly restricted when compared with the permanent custody order included in the

couple's divorce decree. Indeed, the divorce decree appears to be the order that the juvenile court was referring to when it stated, "The prior order that [Father] and [Mother] have joint legal custody of [P.D.] is vacated. Full custody and guardianship of [P.D.] is awarded to [Mother]." Moreover, while the February 2012 order did not tinker much with the quantum of custody and visitation that had been decreed in the November 2011 order, the new order moved the disposition from temporary to permanent—a momentous change in Father's view. Father's rights had been in a state of flux following the allegations of abuse and petition for a protective order. We determine that the modification made at the February 2012 hearing was a change that, if for no other reason than it moved the custody arrangement from being temporary to permanent, "further restrict[ed]" Father's parental rights. *See id.* Therefore, we conclude that rule 47 does apply.

### III. The Juvenile Court's Failure To Grant An Evidentiary Hearing Was Harmless.

¶11    While the State argues that the failure to grant an evidentiary hearing was harmless, Father argues that a juvenile court's failure to grant an evidentiary hearing "can never constitute harmless error" because it implicates the due process rights of parents. This conclusory statement ignores Father's burden to show that the error committed by the juvenile court ultimately impacted the outcome of the proceedings. "On appeal, the appellant has the burden of demonstrating an error was prejudicial—that there is a reasonable likelihood that the error affected the outcome of the proceedings." *Steffensen v. Smith's Mgmt. Corp.*, 820 P.2d 482, 489 (Utah Ct. App. 1991) (citation and internal quotation marks omitted).

¶12    Father has failed to meet his burden to show that had an evidentiary hearing been granted, "'the likelihood of a different outcome [would have been] sufficiently high as to undermine our confidence in the [judgment].'" *Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553 (quoting *Crookston v. Fire Ins. Exch.*, 817 P.2d 789,

796 (Utah 1991)). Mother was given full custody, on a temporary basis, after the allegations of sexual and other abuse were made against Father. These allegations were later deemed by the court to be true after Father entered a plea under rule 34(e). As the juvenile court pointed out, "There's a court finding in place he sexually abused his son. And so I take that and determine . . . what I need to do, given this information." While the juvenile court expressed concern that Father had not fully understood the consequences of a rule 34(e) plea, the court also made it clear that the consequences were fully explained to and acknowledged by Father before the plea was entered. The findings of sexual abuse against Father have not been vacated or modified, and Father has failed to demonstrate how an evidentiary hearing would have elicited evidence that would convince the court that requiring P.D. to spend more time with an adjudicated sex offender—an adjudicated sex offender who had abused *him*—was in the child's best interest.

¶13    Instead of demonstrating how an evidentiary hearing would have benefitted him, or attempting to explain to this court what additional evidence or testimony he would have provided at the hearing that might have altered the juvenile court's custody determination,[2] Father instead primarily argues that he was

---

[2]Father did not proffer, nor even ask to proffer, the evidence he expected to adduce at the evidentiary hearing. Absent such a proffer, a harmless error conclusion is almost automatic. *See, e.g., State v. Frame*, 723 P.2d 401, 406 (Utah 1986) (holding defendant could not show that counsel's failure to call certain witnesses was prejudicial when defendant did "not identify what other persons should have been called as witnesses or how their testimony was essential to his defense"); *Black v. Hennig*, 2012 UT App 259, ¶ 16, 286 P.3d 1256 (holding "no appellate relief is available" to a party who fails to proffer the contents of improperly excluded evidence, and that such failure to proffer "prevents [the court] from undertaking a

(continued...)

necessarily harmed simply because the error occurred. Father does point to his efforts to cooperate with court orders, including enduring a psychosexual evaluation and attending parenting classes, the success of visitation with P.D., and a positive report from another therapist as evidence that the juvenile court had another choice besides granting full custody to Mother. However, Father fails to explain how this information demonstrates that the error of denying an evidentiary hearing was harmful or how the introduction of these facts at such a hearing would have changed the ultimate custody arrangement. After all, this information was already before the juvenile court when it made the determination to permanently grant Mother full custody of P.D.

CONCLUSION

¶14    We determine that the plain language of rule 47 of the Utah Rules of Juvenile Procedure entitled Father to an evidentiary hearing. However, because Father has failed to meet his burden to demonstrate how this error ultimately impacted the juvenile court's custody determination, we affirm.

---

[2](...continued)
meaningful harmless error analysis"). *See also Downey State Bank v. Major-Blakeney Corp.*, 578 P.2d 1286, 1288 (Utah 1978) (holding that "failure to make a proffer as to what his evidence would show precludes him from asserting on appeal that the exclusion was error"), *overruled on other grounds by Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980).