UNITED STATES of America,
Plaintiff–Appellee,

v.

Larry M. McDONALD,
Defendant–Appellant.

No. 90–1002.

United States Court of Appeals,
Tenth Circuit.

May 31, 1991.

communication with a juror; and (4) the sufficiency of the evidence relating to the firearm charge. We affirm.

## I. Background

Defendant was observed by police officers sitting in his car when two people approached the car and items were then passed between Defendant and the two persons. The police ran a license check and found there existed an outstanding arrest warrant for Defendant. The police then went to Defendant's car, asked Defendant his identity, and after confirming his identity arrested Defendant.

The police then searched the car. This search revealed 6.7 grams of base or rock cocaine found under the armrest; a single-edge razor blade found on a service tray located on the center hump of the automobile; a telephone beeper; and a loaded .357 Ruger pistol found under the driver's seat. A search of Defendant produced $990 in cash and $20 in food stamps.

John M. Hutchins, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., David M. Gaouette, Asst. U.S. Atty., with him on the briefs), Denver, Colo., for plaintiff-appellee.

Richard J. Banta (Shelley Gilman of Pozner Hutt Gilman Kaplan, P.C., on the opening brief; Larry W. McDonald, pro se, on the supplemental opening brief), Denver, Colo., for defendant-appellant.

Before MOORE, SETH and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Mr. McDonald (Defendant) appeals his convictions of possession with intent to distribute more than five grams of cocaine base and carrying a firearm during and in relation to a drug trafficking crime. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii); 18 U.S.C. § 924(c)(1).

Defendant assigns error to four matters: (1) the trial court's allowance of expert testimony; (2) the failure to give certain instructions; (3) the trial court's ex parte

## II. The Expert Testimony

After testimony was introduced relating the basic facts as outlined above, the prosecution called an expert witness. The expert's credentials were substantial. He was one of the supervisors for the Denver Metro Crack Task Force. He possessed a bachelor's and a master's degree and had extensive training concerning cocaine and cocaine trafficking. He was in charge of investigating ninety per cent of the crack investigations performed by the Denver police since crack first was discovered in Denver in 1986.

Counsel for Defendant objected to the testimony, stating:

Basically, as I said, I have no problem with it, if this officer wants to testify from his experience. What he knows about how crack is packaged. Or how it's sold or anything like that. But if this is going to lead to this officer offering an opinion as to what all this means, then I strongly object. That's for the jury to decide.

The trial court instructed the prosecution to proceed, taking one point at a time.

The expert testified as to the significance of the quantity of the cocaine. He testified 6.7 grams was equal to about one quarter ounce; the average street sale dosage would be somewhere between an eight-hundredth of a gram and a tenth of a gram; and the normal dose sells for around $20. He testified the quantity possessed by Defendant was a lot larger than what would normally be considered as a dose.

The expert testified that people buying and selling crack cocaine commonly have single-edge razor blades in their possession in order to cut up the cocaine base into saleable or usable quantities. He testified crack is not sold in packages, but is commonly sold "just as rocks."

The expert testified a great deal of money is involved in the crack business. Amounts of $990 are often encountered on street level dealers. The expert further testified that crack is commonly exchanged for food coupons. The expert testified street dealers frequently arm themselves to protect the merchandise and the money. Finally, the expert testified there is an ever increasing trend in the drug trade toward the use of pagers or beepers. Lookouts and runners utilize this method to communicate with the dealer.

At the conclusion of this testimony, counsel for Defendant again objected, arguing "[i]t's intruding on the province of the jury. What he is basically saying is this man is guilty, not based on anything he observed or anything he knows about this particular case, but simply on suspicion and innuendo," and he requested a mistrial. The trial court denied the motion.

Defendant now characterizes this evidence as a criminal profile and argues it was wrongly used as substantive evidence of guilt.

What is "profile evidence"? Courts define it in varying terms such as an "informal compilation of characteristics often displayed by those trafficking in drugs," *United States v. Campbell*, 843 F.2d 1089, 1091 n. 3 (8th Cir.1988); "an 'abstract of characteristics found to be typical of persons transporting illegal drugs,' " *United States v. Oyekan*, 786 F.2d 832, 834 n. 2 (8th Cir.1986) (citation omitted); and "the collective or distilled experience of narcotics officers concerning characteristics repeatedly seen in drug smugglers," *Florida v. Royer*, 460 U.S. 491, 525 n. 6, 103 S.Ct. 1319, 1339 n. 6, 75 L.Ed.2d 229 (1983) (Rehnquist, J., dissenting). A profile is simply an investigative technique. It is nothing more than a listing of characteristics that in the opinion of law enforcement officers are typical of a person engaged in a specific illegal activity.

The common use of profile evidence is to make investigative stops. Courts have frequently upheld investigative stops based upon profile characteristics. *See, e.g., United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Nunley*, 873 F.2d 182 (8th Cir. 1989). The case before us does not involve an investigatory stop, nor does it involve the issue of reasonable suspicion.

Courts have condemned the use of profiles as substantive evidence of guilt. In *United States v. Hernandez–Cuartas*, 717 F.2d 552, 555 (11th Cir.1983), the government introduced testimony from a customs inspector about the use and meaning of a profile. The court, while not prohibiting the use of a profile, warned against its use as substantive evidence of guilt. The court went on to affirm the conviction as the testimony was admitted purely for background material as to how and why Defendant was stopped and searched. In *United States v. Beltran–Rios*, 878 F.2d 1208, 1210 (9th Cir.1989), the court criticized the use of profile evidence but affirmed the conviction as the testimony came in response to cross-examination by the defense. In *United States v. Quigley*, 890 F.2d 1019 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990), the court condemned a conviction where profile evidence was used as substantive evidence of guilt; however, the court upheld the conviction as there was substantial other evidence showing guilt.

Rather than focusing our inquiry upon defining and classifying evidence into categories of profile or non-profile, we believe the better approach is to commence our inquiry with an examination of the applicable rules of evidence. Fed.R.Evid. 702[1] instructs us to admit specialized knowledge if it will assist the trier of fact in understanding the evidence. Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject.

In the case before us the evidence was specialized.[2] Defendant possessed 6.7 grams of rock cocaine. A person possessing no knowledge of the drug world would find the importance of this fact impossible to understand. The average juror would not know whether this quantity is a mere trace, or sufficient to pollute 1,000 people.

The next items of evidence can best be described as a drug dealer's tools of trade: a single-edge razor blade, a pager or beeper, and a loaded pistol. Is the possession of these items something the jury can understand without the benefit of specialized knowledge?

We observe the razor blade is at least circumstantial evidence suggesting Defendant possessed the means to cut the rock cocaine and thus intended to distribute. The possession of the remaining tools of the trade, the pager and the loaded pistol, are likewise circumstantial evidence. The proper inquiry concerning expert evidence is simply whether the jury is able to understand the evidence without the specialized knowledge that is available from the testimony of an expert witness.

The $990 cash and $20 in food stamps were the next items of evidence to be considered. Why would someone have such a large quantity of money and food stamps upon his person? Without understanding the drug trade is a cash-and-carry business, and that both cash and food stamps are the medium of exchange in a drug transaction, the basic evidence would leave a juror puzzled. A jury could not understand the significance of this evidence without the particular background knowledge of how a drug dealer works.

These are not subjects with which most jurors are familiar. We find other cases reaching a similar result. In *United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir.1987), expert testimony was allowed concerning the unique language of narcotics dealers. In *United States v. Kusek*, 844 F.2d 942, 949 (2d Cir.), *cert. denied*, 488 U.S. 860, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988), the court allowed testimony concerning the use of codes by narcotics dealers. And in *United States v. Gomez–Norena*, 908 F.2d 497, 501–02 (9th Cir.) *cert. denied*, —— U.S. ——, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990), the court allowed expert testimony concerning the discovery of a large amount of cocaine and the way it was concealed to be admitted on the issue of the defendant's intent to distribute cocaine. *See also United States v. Espinosa*, 827 F.2d 604, 611–13 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988), which involved the use of "stash pads" and "pay and owe ledgers."

■■■ The trial judge has broad discretion concerning the admission or exclusion of expert testimony. In reviewing this decision, we defer to the trial court and do not reverse unless there is an abuse of discretion. *United States v. Esch*, 832 F.2d 531, 535 (10th Cir.1987), *cert. denied* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242

---

1. Fed.R.Evid. 702 is quoted in its entirety:

   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

2. We realize the trial court never formally accepted the police officer as an expert witness. However, the court heard the witness describe his qualifications, including his specialized knowledge, education, skill and experience, and then allowed the witness to give opinion testimony. We therefore assume the witness was accepted as an expert witness by the trial court.

(1988); *United States v. Barton*, 731 F.2d 669, 672 (10th Cir.1984). In the case before us, the basic facts were the amount of drugs and the possession of several items of personal property. The jury could not be expected to understand this evidence without specialized knowledge. We hold the trial court did not abuse its discretion in allowing the jury to receive this evidence. We also observe the jury was given an instruction concerning the expert evidence that allowed them to accept or reject it.

We emphasize our holding revolves about our determination that the expert testimony consisted of specialized knowledge to assist the jury in understanding the evidence. We think this is the proper test. The trial court must base its decision upon the applicable rules of evidence. We reserve the question of whether expert testimony regarding profiles is—by itself—substantive proof of crime to another day. *But see United States v. Simpson*, 910 F.2d 154, 157 (4th Cir.1990) (proof that a person fits a profile without any other evidence of drug trafficking proves nothing).

We asked the parties to brief the issues of the permissibility of commenting on the significance of the evidence found in the possession of Defendant and whether the expert testimony carries with it the obligation of a limiting instruction. In view of our decision approving of the admission of the expert testimony, and in view of the fact the trial court gave a proper instruction concerning the expert testimony by telling the jury it was free to accept or reject the testimony, we need not address these issues any further.

### III. The Ex Parte Juror Communication

After the defense presented its final witness, the trial was recessed for the evening. As the defense witness was leaving the courthouse, federal agents arrested him on an outstanding warrant. The arrest was witnessed by one of defense counsel's investigators who testified at a hearing the following day that two specified jurors might have witnessed the incident. Both jurors were questioned by the trial court and denied witnessing anything unusual or even seeing the witness leave the courthouse. The proceedings were recessed and the judge instructed counsel to meet him in chambers. On the way to chambers the judge was stopped by one of the jurors just questioned. The judge described the encounter as follows:

THE COURT: I have previously informed counsel on both sides, and now state on the record, that just after the last hearing in open court when we called two of the jurors in, that was Renee Ray, wasn't it, and Mr. Quentin Blakeslee, I believe, we called them into court, right after that when I came out to return to chambers, I walked past the jury room and Miss Ray asked if she could speak to me and came into chambers and closed the door and said she was concerned whether anybody in this case was a—actually, her concern was as to Mr. Cole only at that time, whether Mr. Cole was a member of any gang.

And I then—then she told me, mentioned the word, "Crips," so I suppose she is concerned about whether he is a member of the Crips or Bloods.

I told her that there is no evidence that anybody involved with this case is a member of any gang or related to any gang or that this matter was in any way gang-connected and told her that also that there is no evidence that the defendant is in any way connected with any gang activity. In this case. Or any other case.

So, that's the best I could do under the circumstances, and you know it's just speculation on her part. So—I think that cures any problem, but if you wish to go further into it with her, you can.

Defense counsel responded as follows:

MR. ROSENBLUM: No, Your Honor, I don't. I accept what the Court said and what I would like to do is simply for the purposes of preserving the record move for a mistrial at this point, and the reason I am moving for a mistrial is because I don't see how Miss Ray as an individual juror in this case, and then based on her

input to the jury as a whole, can be fair and impartial, when she has this perhaps unfounded fear of gang members or retaliation in the case, whether it be Mr. Cole or Mr. McDonald or any other gang members, and, of course, the whole problem was precipitated by the fact that she was called into the courtroom in the first place.

THE COURT: Well, you asked for that.

MR. ROSENBLUM: I understand. I am going to get to that in a moment. The problem was precipitated by the fact that she was called into the courtroom in the first place at my request because of things that my investigator knows that she observed and thought the jurors might have observed also.

But the problem emanates even further back than that, and that is the problem the two investigators, Huliani and Lindsey, made the arrest in the lobby of the courthouse in direct contravention to the Court's instructions, and so I think that that's where the problem emanates from, and I think it's a serious problem if the woman fears retaliation from gang members, and I move for a mistrial on that basis.

■ When there is an improper ex parte communication between a juror and the trial judge prejudice is presumed and the burden is on the government to show the communication did not prejudice the substantial rights of the Defendant. *See Rushen v. Spain,* 464 U.S. 114, 118–20, 104 S.Ct. 453, 455–57, 78 L.Ed.2d 267 (1983) (*per curiam*); *Remmer v. United States,* 347 U.S. 227, 229–30, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Day,* 830 F.2d 1099, 1103–04 (10th Cir.1987); *United States v. Washita Constr. Co.,* 789 F.2d 809, 820–21 (10th Cir.1986); *United States v. de Hernandez,* 745 F.2d 1305, 1310 (10th Cir.1984). However, if there is no objection at the time the alleged error occurs, then the matter is reviewed only for plain error. Fed.R.Crim.P. 52(b). A plain error is one which seriously affects the fairness, integrity or public reputation of judicial proceedings. Accordingly, the plain error exception to the contemporaneous-objection rule is used sparingly, and only to prevent a miscarriage of justice. *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). Ex parte communications with jurors fall within the confines of the plain error rule of Fed.R.Crim.P. 52. *United States v. Diggs,* 522 F.2d 1310, 1320–21 (D.C.Cir.1975), *cert. denied,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976). Thus, if there is no objection to the ex parte communication, we review the communication only to decide if there is plain error. *United States v. Mobile Materials, Inc.,* 871 F.2d 902, 918 (10th Cir.1989) (*per curiam*) (where trial counsel indicates he failed to object to a court's post trial admonitions to a jury, review is for plain error).

Defendant argues the trial court's ex parte communication with the juror raises serious concerns about the integrity of the jury deliberations and the trial's fairness. Defendant also takes issue with the judge's comment to the juror that the trial was not about street gangs. During the trial a police officer testified the Defendant told him he carried a gun for protection because he received threats from gang members. Defendant says the judge's comments amounted to an instruction to disregard evidence, and to ignore the possibility that Defendant carried a gun because he lived in a bad neighborhood. Because these arguments are raised for the first time on appeal, we apply the plain error standard in reviewing the trial record as a whole. *See United States v. Kornegay,* 885 F.2d 713, 719 (10th Cir.1989) (reviewing court considers trial record as a whole), *cert. denied,* —— U.S. ——, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990); Fed.R.Crim.P. 52(b).

We know an ex parte meeting between a judge and juror creates a situation "pregnant with possibilities for error." *United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854 (1978). But we further note "[t]here is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial."

*Rushen,* 464 U.S. at 118, 104 S.Ct. at 455–456. Experience teaches it is good practice for the trial judge to terminate a conversation as soon as it becomes clear what the juror wishes to discuss, and to hold a hearing later if necessary with all interested parties permitted to participate. *E.g., Remmer,* 347 U.S. at 229–30, 74 S.Ct. at 451. However, deviating from this preferred approach does not necessarily mean a trial is tainted by plain error that warrants granting a mistrial. *E.g., Rushen,* 464 U.S. at 118–20, 104 S.Ct. at 455–57 (ex parte communication between trial court and individual juror is not per se plain error); *Day,* 830 F.2d at 1103–04 (brief and casual conversation between a juror and witness is not per se plain error); *United States v. Gigax,* 605 F.2d 507, 516 (10th Cir.1979) ("well settled that the failure to provide a full evidentiary hearing into possible prejudice resulting from communications with jurors does not automatically require reversal or remand").

Summarizing the significant facts of the case before us, we find the trial court had an ex parte communication with a juror. A hearing was held and the trial court made full disclosure. The court gave defense counsel the opportunity to pursue the matter further, which was declined. Defense counsel made no objection to the ex parte communication or to the involved juror sitting and, in fact, specifically requested all thirteen jurors deliberate.[3] These actions by defense counsel tend to show counsel felt no prejudice existed at that time. Defense counsel was not left in the dark as to what occurred. After reviewing the record, we do not believe the brief communication caused a miscarriage of justice and hold the communication was not plain error.

We also disagree with Defendant's argument that the judge's statements to the juror were prejudicial to him. Defendant contends on appeal that he was keeping his loaded gun under his car seat for self defense from gangs, and when the judge advised the juror, his defense was destroyed.

Defendant misperceives what the trial court told the juror. The juror was advised there was no evidence that anyone connected with the case, including the Defendant and his witness, Mr. Cole, was "a member of any gang or related to any gang or that this matter was in any way gang-connected." This comment in no way harms Defendant's defense.

Evidence showed Defendant told the arresting officers he had a weapon for protection from "threats from gang members." The defense introduced evidence the area where Defendant was arrested has gangs and some people carry weapons for protection. In closing, defense counsel argued that Defendant carried a weapon because he lives in a bad neighborhood. However, we again stress the record and charges clearly reveal Defendant was not on trial for any alleged involvement in street gangs. With this fact in mind, we reject Defendant's argument that the trial judge's comment prejudiced his case.

The trial judge's remarks did nothing to lessen an explanation that Defendant carried a gun because he was afraid of gangs or lived in a bad neighborhood. The trial judge's statement merely clarified the fact that neither the Defendant nor his witness were before the court on gang-connected charges.

Alternatively, even if the trial judge's statements were misinterpreted by the juror, we still would reject Defendant's argument. The record contains overwhelming evidence of Defendant's guilt. Any error resulting from the trial judge's comment was harmless and we will not reverse.

## IV. Sufficiency of the Evidence

■ Defendant filed a pro se brief where he argues the evidence was insufficient to sustain his conviction for carrying a firearm during or in relation to a drug traffick-

---

**3.** After being told about the communication and learning the juror was concerned about street gangs, defense counsel moved for a mistrial by challenging the juror's ability to be fair and impartial. The motion was denied. Defendant is not attacking denial of a mistrial on this basis on appeal.

ing crime. He says there was no evidence showing the weapon was readily accessible to him during the commission of the drug offense.

The evidence was more than sufficient to sustain Defendant's conviction for carrying a firearm in connection with a drug trafficking crime. Defendant when arrested was sitting in the driver's seat of his car. There was a rock of 6.7 grams of crack cocaine under the center armrest to his right. The Defendant had $990 in cash and $20 in food stamps upon his person. Also found were the razor blade and pager. Defendant does not challenge the sufficiency of the evidence underlying his conviction on the drug charge. Under Defendant's seat was the loaded pistol with the butt pointing out for easy and quick access. Defendant knew the weapon was there. The case of *United States v. Cardenas,* 864 F.2d 1528, 1533 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989), where we said constructive possession is sufficient to sustain a firearm possession conviction is dispositive of this issue. *See also United States v. Martinez,* 912 F.2d 419 (10th Cir.1990) (definition of carrying a weapon is not restricted to weapons carried on the person or in a pocket).

### V. Instructions

Defendant, in a supplemental brief, raised two more issues concerning jury instructions.

 The trial court gave the jury a lesser included offense instruction that would allow the jury to convict if they determined Defendant merely possessed the rock cocaine. Defense counsel requested the jury be instructed that if they found him guilty of mere possession, they must find him not guilty of the weapons charge.

The trial court refused stating the instructions clearly provided that to find Defendant guilty of the firearm charge they must find him guilty of a drug trafficking charge, which was defined. We agree.

Defense has provided us with no authority and merely argues the instruction given "was contradictory."

Defendant also requested the court to instruct the jury about the penalties involved. The trial court denied this request. Defendant offers us no authority to support his position. The trial court properly instructed the jury that punishment was within the province of the statutes and the court and should not be considered in arriving at impartial verdicts.

AFFIRMED.