2006 UT 49

STATE of Utah, Plaintiff and Petitioner,

v.

Thomas Kevin ROTHLISBERGER,
Defendant and Respondent.

No. 20040745.

Supreme Court of Utah.

Sept. 8, 2006.

See also 147 P.3d 1187, 2006 WL 2578193.

---

Mark L. Shurtleff, Att'y Gen., Brett J. Delporto, Asst. Att'y Gen., Salt Lake City, Craig C. Halls, Blanding, for plaintiff.

Barton J. Warren, Salt Lake City, William L. Schultz, Moab, for defendant.

DURRANT, Justice:

## INTRODUCTION

¶ 1 The issue before us is whether testimony as to the quantity of methamphetamine typifying personal use is expert testimony pursuant to rule 702 of the Utah Rules of Evidence and therefore subject to the qualification and advance disclosure requirements associated with that classification of testimony. We conclude that fact or opinion testimony based on specialized knowledge may be admitted only as expert testimony. We further agree with the court of appeals

that Chief Kent Adair's testimony at trial regarding personal use quantities of methamphetamine was expert testimony based on his specialized knowledge. Because it is not within the scope of the issue upon which we granted certiorari, we do not address the State's alternative argument that it was harmless error to admit Chief Adair's testimony absent the required thirty days' notice. We accordingly affirm the court of appeals' decision.

## BACKGROUND

¶ 2 On September 24, 2002, Respondent Kevin Rothlisberger and Tonya Althoff, respondent in the companion case of *State v. Althoff*,[1] were returning from Arizona when police officer Jim Eberling stopped them because the plates on Althoff's car had expired. Officer Eberling arrested Althoff for driving with a suspended license and conducted a search of the vehicle incident to arrest. On the console between the two front seats, Officer Eberling discovered a small baggy containing a white substance that appeared to be methamphetamine. Consequently, Officer Eberling arrested Rothlisberger for possession of methamphetamine and called Police Chief Kent Adair to assist in a more complete search of the car.

¶ 3 After additional searching, Officer Eberling and Chief Adair discovered a larger baggy containing thirty-two grams of methamphetamine, a gym bag containing a scale and small baggies, and a device for storing and ingesting methamphetamine called a "snort tube," which was covered with a white residue later identified as methamphetamine.

¶ 4 Following their arrests, both Althoff and Rothlisberger were candid with Officer Eberling, admitting, among other things, that they had used methamphetamine earlier in the day, that the "snort tube" belonged to Rothlisberger, and that the gym bag containing the scale and baggies belonged to Althoff. Althoff further claimed that all of the "crystal meth" was hers and that Rothlisberger knew nothing about it.

¶ 5 Rothlisberger and Althoff were charged by information with one count of possession of a controlled substance (methamphetamine) with intent to distribute, a second degree felony, under Utah Code section 58–37–8(1)(a)(iii), and possession of drug paraphernalia, a class B misdemeanor, under Utah Code section 58–37a–5(1). At a preliminary hearing, Officer Eberling testified about the arrest and the significance of the quantity of drugs found in the car. At trial, Chief Adair testified about the arrest, and both Chief Adair and Officer Eberling testified about the significance of the quantity of drugs found in the car. Specifically, Officer Eberling testified at trial on cross-examination by Rothlisberger's trial counsel that the larger baggy of methamphetamine "made [him] think that [Rothlisberger and Althoff] had the [methamphetamine] for sale." Later, Chief Adair testified that methamphetamine is usually packaged in quantities of "[a] quarter or half grams [sic], . . . [m]aybe even at the most a gram." At this point, counsel for Althoff and Rothlisberger objected to this line of questioning because it elicited "expert testimony" under rule 702 of the Utah Rules of Evidence and therefore required the State to give the defense thirty days' advance notice. The trial court overruled this objection, determining that Chief Adair's testimony was that of a lay witness and thus not subject to the notification requirement. Chief Adair then testified that during undercover investigations officers usually purchase methamphetamine in quantities of "a quarter or a half a gram," and that it is not "common" for someone who had personal quantities of methamphetamine to possess scales. After considering Rothlisberger's posttrial motions on the expert testimony issue, the trial court determined that Chief Adair's testimony was neither lay nor expert opinion testimony, but instead was a statement of fact about his actual experience. Rothlisberger was convicted on all charges, and he timely appealed.

¶ 6 The court of appeals reversed the trial court's judgment and remanded the case for a new trial, holding that Chief Adair's testimony was improperly admitted as lay opinion

1. 2006 UT 48, 147 P.3d 1187.

testimony.[2] The court of appeals concluded that the testimony was expert testimony and therefore inadmissible because the State had not properly notified the defense of the testimony in advance of trial.[3]

¶ 7 We granted certiorari to review whether the court of appeals correctly determined that Chief Adair's testimony as to the quantity of methamphetamine typical of personal use is expert testimony governed by rule 702 of the Utah Rules of Evidence. We have jurisdiction pursuant to Utah Code section 78–2–2(3).

## STANDARD OF REVIEW

¶ 8 On certiorari, we review the decision of the court of appeals for correctness and examine whether the court of appeals applied the appropriate standard of review in assessing the district court's decision.[4] In this case, the court of appeals applied the appropriate standard, reviewing for abuse of discretion the trial court's determination that Chief Adair's testimony was not expert testimony.[5]

## ANALYSIS

¶ 9 We granted certiorari to consider the narrow issue of whether a police officer gives expert testimony under rule 702 of the Utah Rules of Evidence when, based on his training and experience, he testifies as to the quantities of a controlled substance that typify personal use. Whether testimony is classified as expert testimony under rule 702 is significant in that the party offering such testimony must satisfy various qualification and advance disclosure requirements. The State did not give advance disclosure that Chief Adair would be testifying as an expert in this case. Nevertheless, the State argues that Chief Adair's testimony was admissible as lay testimony under rule 701 or as fact testimony without regard to rule 701 or 702. In the alternative, the State argues that, even if the district court erred in admitting

Chief Adair's testimony as lay testimony, any error was harmless because there was other evidence sufficient to show that Rothlisberger had an intent to distribute. We reach only the first argument, however, because the State's harmless error argument is not before us on certiorari.

## I. CHIEF ADAIR'S TESTIMONY COULD BE ADMITTED ONLY AS EXPERT TESTIMONY

¶ 10 To determine whether Chief Adair's testimony was expert testimony, we examine Article VII of the Utah Rules of Evidence. Of particular import to our analysis are rules 701 and 702. Rule 701 of the Utah Rules of Evidence provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Rule 702 of the Utah Rules of Evidence provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

¶ 11 In this case, we consider three types of testimony: lay fact testimony, lay opinion testimony, and expert testimony. Lay fact testimony, which is not directly addressed by rule 701 or 702, is factual testimony not based on scientific, technical, or other specialized knowledge.[6] Lay opinion testimony, which is treated under rule 701, is opinion or inference testimony not based on scientific, technical, or other specialized

---

**2.** *State v. Rothlisberger,* 2004 UT App 226, ¶ 32, 95 P.3d 1193.

**3.** *Id.*

**4.** *State v. Cram,* 2002 UT 37, ¶ 6, 46 P.3d 230.

**5.** *Alder v. Bayer Corp.,* 2002 UT 115, ¶ 20, 61 P.3d 1068.

**6.** *See infra* ¶¶ 16.

knowledge.[7] Expert testimony, which is treated under rule 702, is opinion or fact testimony based on scientific, technical, or other specialized knowledge.[8]

■ ¶ 12 With respect to expert testimony under rule 702, the offering party must usually satisfy various qualification and advance disclosure requirements.[9] There is no dispute that Chief Adair was qualified to testify as he did. Rothlisberger argues that admission of Chief Adair's testimony was error, however, because the State did not give the requisite advance notice of his testimony.

¶ 13 The State presents three arguments as to why Chief Adair's testimony was admissible without satisfaction of the advance disclosure requirements for expert testimony: (A) Chief Adair's testimony was admissible because it contained only statements of fact, not opinions; (B) Chief Adair's testimony was admissible because it satisfied rule 701's requirements that (1) the testimony be based on the witness's personal perception, and (2) the testimony be helpful to the fact finder; and (C) rule 702 did not apply because Chief Adair's testimony was not based on specialized knowledge. We address each of these arguments in turn.

### A. Rule 702 Applies to Both Fact and Opinion Testimony Based on Specialized Knowledge

¶ 14 The State argues that Chief Adair's testimony consisted only of statements of fact about his experiences and that it therefore was admissible without regard to either rule 701 or rule 702. Under the common law, lay opinion testimony was prohibited.[10]

But this doctrine creating a bright-line separation between fact and opinion testimony proved unworkable in practice.[11] For this reason, the rigid restriction was gradually relaxed, and the U.S. Supreme Court and Congress ultimately adopted rule 701 of the Federal Rules of Evidence, which allowed lay opinion testimony where it would be helpful to the fact finder.[12] Although the federal rule 701 was amended in 2000, the original language is of some import because rule 701 of the Utah Rules of evidence was adopted verbatim from the original federal rule.[13]

■ ¶ 15 It is from the historical distinction between fact and opinion testimony that the State argues that "fact testimony" of any type is admissible as a general matter under the rules of evidence. The State's argument is in conflict, however, with the plain meaning of the applicable portions of the Utah Rules of Evidence. Our objective in interpreting a court rule is to give effect to the intent of the body that promulgated it.[14] Thus, we interpret a court rule in accordance with its plain meaning,[15] and we construe the rule so that it is in harmony with related rules.[16]

■ ¶ 16 As an initial matter, we note that the distinction between fact and opinion testimony arguably retains some viability under our rule-based system. Rule 701 speaks only to "testimony in the form of opinions or inferences" and does not address the admissibility of pure fact testimony requiring no specialized knowledge (i.e., lay fact testimony).[17] Lay fact testimony has always been a primary, acceptable source of evidence in our

---

7. See infra ¶¶ 21–29.

8. See infra ¶¶ 17–20.

9. See, e.g., Utah R. Evid. 702; Utah R. Civ. P. 26.

10. See Edward L. Kimball & Ronald N. Boyce, Utah Evidence Law, at 7–243 (2d ed.2004).

11. See 7 Wigmore, Evidence § 1919 (Chadbourn rev.1978) (discussing logical weakness of distinction between fact and opinion).

12. See Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1195 (3d Cir.1995) (discussing Fed.R.Evid. 701 (1995) (amended 2000)).

13. See Utah R. Evid. 701 advisory committee's note.

14. Burns v. Boyden, 2006 UT 14, ¶ 19, 133 P.3d 370.

15. Id.

16. Cf. State v. Barrett, 2005 UT 88, ¶ 29, 127 P.3d 682 (stating that statutes are to be interpreted in harmony with related statutory sections).

17. Utah R. Evid. 701.

system.[18] Accordingly, lay fact testimony need not satisfy rule 701 or 702 but is admissible so long as it complies with other portions of the Utah Rules of Evidence, including the relevancy rules in Article IV[19] and rule 602's requirement that a witness have personal knowledge of the matter about which he or she is testifying.[20]

¶ 17 It does not follow, however, that fact testimony based on specialized knowledge is likewise admissible without regard to rules 701 and 702. Although the State has cited some other jurisdictions that have apparently taken a position that suggests that fact testimony based on specialized knowledge need not comply with rule 702,[21] we conclude that allowing admission of this type of testimony as nonexpert testimony conflicts with both the plain meaning of Utah rule 702 and the advisory committee's note to the original federal rule 702.

■ ¶ 18 Rule 702 of the Utah Rules of Evidence establishes the limits of admissible testimony for expert witnesses. It provides that an expert may testify "in the form of an opinion or *otherwise*."[22] The significance of the rule's use of the word "otherwise" becomes apparent when rules 701 and 702 are considered together. In contrast to rule 702's applicability to "testimony in the form of opinion or otherwise,"[23] rule 701 concerns only "testimony in the form of opinions or inferences."[24] Use of the word "otherwise" in rule 702 denotes the broader application of rule 702 than rule 701. Thus, whereas the fact-opinion distinction survives to some extent in the realm of lay testimony, it has much less significance in the expert testimony context. Whether the testimony based on

specialized knowledge is in the form of fact or opinion, rule 702 applies.

¶ 19 The advisory committee's note to federal rule 702 further supports this interpretation. The note states that

> [m]ost of the literature assumes that experts testify only in the form of opinions. The assumption is logically unfounded. [Rule 702] accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.[25]

Thus, the advisory committee clearly understood rule 702 to apply to both "scientific or other principles," i.e., facts, and opinions based on specialized knowledge.

■ ¶ 20 In sum, if testimony, "opinion or otherwise," is based on "scientific, technical, or other specialized knowledge," it is within the scope of rule 702 of the Utah Rules of Evidence and may not be admitted as lay fact testimony. In other words, whether Chief Adair's testimony was admissible as lay fact testimony depends on whether it is based on specialized knowledge. As noted below, we conclude that his testimony is based on specialized knowledge.[26] Accordingly, Chief Adair's testimony regarding the quantity of methamphetamine typifying personal use is not admissible as lay fact testimony. Having determined that both fact and opinion testimony based on specialized knowledge are within the scope of rule 702, we now consider whether testimony based on specialized knowledge may nevertheless be admitted under rule 701 as lay opinion testimony so long as it is based on the witness's personal perception and is helpful to the fact finder.

18. *See* 1 Kenneth S. Broun, *McCormick on Evidence* § 11 (6th ed.2006).

19. *See* Utah R. Evid. art. IV.

20. Utah R. Evid. 602.

21. *E.g., United States v. Kayne*, 90 F.3d 7, 12 (1st Cir.1996) (concluding that testimony from coin dealers about the price paid for coins was fact testimony not outside the competence of a lay witness under rule 701); *Davenport v. United States*, 197 F.2d 157, 158 (5th Cir.1952) (con-

cluding that testimony regarding the common use of a finger stall was fact testimony, not opinion).

22. Utah R. Evid. 702 (emphasis added).

23. *Id.*

24. *Id.* 701.

25. Fed.R.Evid. 702 advisory committee's note.

26. *Infra* ¶¶ 30–36.

## B. Rule 701 Does Not Allow Admission of Testimony Based on Specialized Knowledge

¶ 21 We now address the State's argument that, under rule 701, a lay person may testify about specialized knowledge so long as the testimony is based on the witness's personal perception and would be helpful to the fact finder. The State argues that even if Chief Adair's testimony is based on specialized knowledge, his testimony was admissible under rule 701 because it was based on his personal perception and was helpful to the jury. To determine whether rule 701 of the Utah Rules of Evidence allows admission of such testimony as lay opinion testimony, we examine the intent of the body that promulgated the rule by looking to the rule's plain meaning.[27] Further, we interpret the rule to give meaning to all its parts, avoid construing the rule in a way that renders any portion of it superfluous,[28] and interpret the rule so as to maintain its harmony with other court rules related to it.[29]

¶ 22 At first glance, the language of rule 701 appears to require only that an opinion be based on personal perception and that it be helpful to the fact finder. But this reading ignores the fundamental distinction between lay and expert testimony. Article VII of the Utah Rules of Evidence is primarily concerned with regulating expert testimony. It includes rules establishing the forms of expert testimony that are admissible,[30] as well as rules regarding court appointment of an expert,[31] the compensation of experts,[32] the facts or data upon which an expert may

rely,[33] and disclosure of those facts or data.[34] In contrast, Article VII includes only one rule addressing lay testimony. Rule 701 sets forth the requirements that must be met for lay testimony in the form of opinions or inferences to be admissible. A fundamental problem with the State's construction of rule 701 as allowing lay testimony based on specialized knowledge is that such a construction permits rule 701 to subsume the rest of Article VII.

¶ 23 Even more compelling, rule 701 by its explicit terms applies only to lay testimony. That rule states that the witness may not be "testifying as an expert."[35] The reference to "an expert" logically leads to rule 702, which essentially defines an expert as one who testifies based on "scientific, technical, or other specialized knowledge."[36] Given the language of these two rules, the requirement that we give effect to all portions of a rule[37] demands that we maintain a distinction between rules 701 and 702 and, accordingly, disallow admission of testimony under 701 where it is based on specialized knowledge. In essence, expert testimony-testimony based on "scientific, technical, or other specialized knowledge"[38]—may not be admitted as lay opinion testimony under rule 701.

¶ 24 The amendment to rule 701 of the Federal Rules of Evidence in 2000 further supports this interpretation. The federal rule 701 appears to have been amended in direct response to a number of federal court decisions that blurred the distinction between rules 701 and 702.[39] Federal Rule 701 now expressly prohibits a lay witness from

27. *Burns v. Boyden*, 2006 UT 14, ¶ 19, 133 P.3d 370.

28. *LKL Assocs. v. Farley*, 2004 UT 51, ¶ 7, 94 P.3d 279.

29. *Cf. State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682 (stating that statutes are to be interpreted in harmony with related statutory sections).

30. Utah R. Evid. 702 (setting forth admissibility of expert testimony); *id.* 704 (allowing expert testimony as to the ultimate issue except as to the mental state of a defendant in a criminal case).

31. *Id.* 706.

32. *Id.*

33. *Id.* 703.

34. *Id.* 705.

35. *Id.* 701.

36. *See id.* 702.

37. *See LKL Assocs. v. Farley*, 2004 UT 51, ¶ 7, 94 P.3d 279.

38. Utah R. Evid. 702.

39. *See infra* note 52 (listing cases allowing admission of testimony under rule 701 even though the testimony was based on specialized knowledge).

testifying "based on scientific, technical or other specialized knowledge within the scope of Rule 702."[40] While it is true that Utah has not amended rule 701 to track the changes in its federal counterpart, the advisory committee's note to the 2000 amendments to rule 701 of the Federal Rules of Evidence indicates that the amendment was not intended to change the law.[41] Instead, the amendment was intended to avoid a misinterpretation of the unamended version of rule 701. As in interpreting statutes, "where the purpose of an amendment [to a procedural rule] is intended to clarify the meaning of an earlier [version of the rule], the amendment may be applied retroactively."[42]

¶ 25 Specifically, the advisory committee's note states that the amendment was necessary "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."[43] "The amendment makes clear that any part of a witness's testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements...."[44] "The amendment is not intended to affect the prototypical example[s] of the type of evidence contemplated by the adoption of Rule 701" because such opinion testimony is not based on the experience, training, or specialized knowledge within the realm of an expert.[45]

¶ 26 In addition to the plain language of rule 701 and the advisory committee's note to the 2000 amendments to the federal rule, policy considerations support our conclusion that testimony based on specialized knowl-

edge may be admitted only under rule 702. There is a substantial body of law that has been developed to regulate the admissibility of expert testimony. Rule 702 has a built-in requirement that an expert witness be "qualified."[46] Under *State v. Rimmasch*[47] and its progeny, we have also required a certain level of reliability for novel expert evidence.[48] Furthermore, our rules of civil procedure require parties to provide more extensive notice of expert witnesses than of lay witnesses.[49] The Legislature has also imposed additional notice obligations with respect to expert witnesses in criminal cases.[50] All of these rules illustrate the policy judgment that expert testimony should be treated differently than lay testimony.

¶ 27 Yet the State's proposed rule would undermine the objectives of this policy judgment. If testimony based on specialized knowledge could be admitted through rule 701, or if, as discussed above, fact testimony were admissible regardless of whether it is based on specialized knowledge, litigants could effectively avoid all of these requirements by offering the testimony as lay testimony or by structuring their questioning to elicit only factual responses. Interpreting the rules of evidence to include such a broad loophole would frustrate the intent of the rules.

¶ 28 Before we address whether Chief Adair's testimony is indeed based on specialized knowledge, we pause to discuss briefly how other jurisdictions have dealt with the issue of whether opinion testimony based on specialized knowledge may be admitted under rule 701. As we have said, when rule 701 of the Utah Rules of Evidence was adopted, it was the federal rule verbatim.[51] Although

**40.** Fed.R.Evid. 701.

**41.** *See* Fed.R.Evid. 701 advisory committee's note on 2000 amendments.

**42.** *Kilpatrick v. Wiley*, 2001 UT 107, ¶ 59, 37 P.3d 1130.

**43.** Fed.R.Evid. 701 advisory committee's note on 2000 amendments.

**44.** *Id.*

**45.** *Id.* (alteration in original) (internal quotation marks omitted).

**46.** Utah R. Evid. 702.

**47.** 775 P.2d 388 (Utah 1989).

**48.** *See, e.g., id.* at 397.

**49.** Utah R. Civ. P. 26.

**50.** Utah Code Ann. § 77–17–13 (2003).

**51.** *See* Utah R. Evid. 701 advisory committee's note.

the federal rule was amended in 2000, federal courts' analyses of the federal rule prior to 2000 may be helpful in the analysis of our rule. Likewise, the interpretation of a rule by state courts whose rule is similarly patterned after the original federal rule may also be helpful. Accordingly, the State has cited many cases where courts have concluded that testimony need satisfy only the two explicit requirements of rule 701 to be admissible.[52] In other words, the cases cited by the State hold that a court need not consider whether the testimony is based on specialized knowledge but may admit the testimony under rule 701 so long as it is (1) "rationally based on the perceptions of the witness" and (2) "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." [53] But other courts have interpreted the pre–2000 federal rule 701 more narrowly. They conclude that lay witnesses may testify regarding their direct perceptions, but only a qualified expert may give testimony that relies on scientific, technical, or other specialized knowledge.[54] As our discussion above illustrates, we find the former courts' interpretation unpersuasive and conclude that the latter courts' interpretation of the rules is correct.

¶ 29 In sum, we conclude that rule 701 of the Utah Rules of Evidence does not allow for admission of testimony based on scientific, technical, or other specialized knowledge. Ultimately, testimony based on specialized knowledge, whether in the form of fact or opinion, may be admitted only as expert testimony under rule 702 of the Utah Rules of Evidence. Thus, to the extent that Chief Adair's testimony was based on specialized knowledge, it could not be admitted under rule 701 of the Utah Rules of Evidence.

## C. Chief Adair's Testimony as to Personal Use Amounts of Methamphetamine Was Based on Specialized Knowledge

¶ 30 The State next argues that Chief Adair's testimony is not based on "specialized

---

**52.** *See, e.g., United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir.1995) (holding that an officer's testimony as to the nexus between the drug trade and guns was admissible under rule 701); *United States v. Awan,* 966 F.2d 1415, 1430–31 (11th Cir.1992) (holding that a police officer's testimony about the meaning of code words in a tape-recorded conversation was lay opinion testimony because it was based on his reasonable perceptions and would be helpful to a clear understanding of his testimony); *Burlington N. R.R. Co. v. Nebraska,* 802 F.2d 994, 1004 (8th Cir.1986) (holding that testimony regarding the safety of cabooseless trains was based on the railroad executives' personal perception gained over their years of experience and was therefore admissible as lay testimony); *United States v. Sweeney,* 688 F.2d 1131, 1145 (7th Cir.1982) (holding that a witness's testimony identifying a drug was admissible as lay opinion testimony because the witness's conclusion was based on the personal perception that the drug had the same effect as other drugs of the same type that he had used previously); *State v. Frasure,* 323 Mont. 479, 100 P.3d 1013, 1016 (2004) (holding that the police officers' testimony that the amount of methamphetamine the defendant possessed illustrated an intent to sell was lay opinion testimony because it was rationally based on their perceptions and helped give a clear understanding of whether the defendant had the necessary intent); *State v. Bunch,* 104 N.C.App. 106, 408 S.E.2d 191, 193–94 (1991) (holding that an officer's testimony concerning common practices of drug dealers is admissible lay opinion testimony because it is based on personal knowledge and helpful to the jury); *Reece v. State,* 878 S.W.2d 320, 324–25 (Tex.Ct.App.1994) (holding that a police officer's testimony that the defendant's actions were consistent with selling drugs was lay opinion testimony, which was permissible because it was based on the perception of that person and helpful to a clear understanding of his testimony or the determination of a fact in issue).

**53.** *See* cases cited *supra* note 52.

**54.** *Certain Underwriters at Lloyd's, London v. Sinkovich,* 232 F.3d 200, 203 (4th Cir.2000); *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 848 (10th Cir.1979); *see also United States v. Novaton,* 271 F.3d 968, 1009 n. 9 (11th Cir.2001) (stating without deciding that under the amended version of rule 701 "experiences which provided the testifying agents with a basis for rationally perceiving the information provided in their opinion testimony in this case would constitute 'specialized knowledge' that would now be admissible only under Rule 702").

knowledge" as that term is used in rule 702. Chief Adair testified that for personal use, individuals typically purchase "[a] quarter or half grams [sic][,] ... [m]aybe even at the most a gram." Chief Adair also testified that it is not common for "someone who had personal quantities of methamphetamine to have scales." We conclude that this is expert testimony because it is based on Chief Adair's "specialized knowledge."

¶ 31 We have previously held that a police officer may be qualified as an expert to testify that a certain quantity of drugs is possessed for distribution purposes,[55] but we have never specifically held that this type of testimony is based on "specialized knowledge" such that only an expert could give it. Although we have not directly defined the term specialized knowledge as it relates to our current rules of evidence, we have noted in the past that specialized knowledge is knowledge "with which lay persons are not familiar."[56] Other courts have similarly defined specialized knowledge as "beyond the ken of the average juror"[57] or outside the knowledge of a "civilian bystander."[58]

¶ 32 These definitions are consistent with the treatment of specialized knowledge in two federal cases that we find persuasive: *United States v. Figueroa–Lopez* from the Ninth Circuit,[59] and *United States v. McDonald* from the Tenth Circuit.[60] In *Figueroa–Lopez*, the Ninth Circuit held that a police officer's testimony regarding the techniques of a drug dealer was based on specialized knowledge.[61] The court noted that to

hold otherwise would "blur[ ] the distinction" between rule 701 and 702 and allow the government to offer specialized opinions without establishing the requisite qualifications or providing the requisite notice.[62] "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump rule 702. Otherwise, a layperson witnessing the removal of a bullet from a heart during an autopsy could opine as to the cause of the decedent's death."[63]

¶ 33 In *McDonald*, the Tenth Circuit adopted a similar definition of specialized knowledge.[64] It concluded that the question of whether testimony was based on specialized knowledge was "a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."[65] In that case, the court determined that testimony regarding the significance of 6.7 grams of rock cocaine was based on specialized knowledge because a "person possessing no knowledge of the drug world would find the importance of this fact impossible to understand. The average juror would not know whether this quantity is a mere trace, or sufficient to pollute 1,000 people."[66]

¶ 34 Consistent with these authorities, we hold that the test for determining whether testimony must be provided by an expert is whether the testimony requires that the witness have scientific, technical, or other specialized knowledge; in other words, whether an average bystander would be able to provide the same testimony. We recog-

**55.** *State v. Bankhead*, 30 Utah 2d 135, 514 P.2d 800, 803 (1973).

**56.** *Fillmore City v. Reeve*, 571 P.2d 1316, 1319 (Utah 1977); *see also Marsh v. Irvine*, 22 Utah 2d 154, 449 P.2d 996, 999 (1969) ("When it appears that the determination of an issue will be aided by knowledge of something which is not generally known by laymen, it is in order to permit one who has specialized knowledge on the subject, and thus may properly be called an expert, to testify...."); *Hooper v. GMC*, 123 Utah 515, 260 P.2d 549, 552 (1953) ("[W]itnesses possessing peculiar skill or knowledge—that is experts—are admissible where the subject matter is not one of common observation or knowledge. ").

**57.** *United States v. Markum*, 4 F.3d 891, 896 (10th Cir.1993).

**58.** *United States v. Figueroa–Lopez*, 125 F.3d 1241, 1245–46 (9th Cir.1997).

**59.** 125 F.3d 1241.

**60.** 933 F.2d 1519 (10th Cir.1991).

**61.** 125 F.3d at 1245–46.

**62.** *Id.* at 1246.

**63.** *Id.*

**64.** 933 F.2d at 1522.

**65.** *Id.*

**66.** *Id.*

nize that the advisory committee's note to federal rule 701 incorporates the distinction between expert and lay testimony set forth in *State v. Brown*[67] that "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.' "[68] This "process of reasoning" language is unhelpful, however, because even highly technical or scientific testimony may be based on simple inductive or deductive reasoning that the average person uses every day. Thus, the real distinction must be based on the level of knowledge that witnesses have from which they can draw their conclusions. If that knowledge is not within the ken of the average bystander, then it is properly characterized as specialized knowledge.

¶ 35 Our definition of specialized knowledge is consistent with our holding in *State v. Ellis*.[69] In that case, we noted that although an expert may be able to opine on a certain set of facts, it does not necessarily follow that only an expert may give such an opinion.[70] In *Ellis*, a security guard was allowed to testify that footprints outside a broken window looked like the footprints inside the building.[71] We reasoned that just because the similarity of footprints could have been scientifically determined and confirmed in testimony by an expert does not mean that an expert is the only witness capable of providing such testimony.[72] The security guard did not need specialized knowledge to testify that the footprints looked similar because that inference would be readily drawn by any person who observed both sets of footprints.

¶ 36 In this case, Chief Adair's testimony that methamphetamine is usually sold in quarter-to-half-gram portions is not the type of testimony that could be offered by an average bystander who had observed Rothlisberger's and Althoff's arrests. Chief Adair's testimony set forth a specific range of methamphetamine quantities typifying personal use. His testimony was based on specialized knowledge that was acquired through extensive training and years of experience with the drug trade. In sum, Chief Adair's testimony is based on specialized knowledge because the average bystander would be unable to provide the same testimony. Accordingly, the court of appeals correctly determined both that Chief Adair's testimony was expert testimony and that the district court erred in admitting that testimony absent the required advance disclosure.

### CONCLUSION

¶ 37 We affirm the court of appeals' conclusion that Chief Adair's testimony is properly characterized as expert testimony and was therefore admissible only through rule 702 of the Utah Rules of Evidence. First, rule 702 encompasses all expert testimony, opinion and otherwise. Second, rule 701 does not provide for admission of testimony based on specialized knowledge because that rule states that the witness may not be testifying as an expert. Third, Chief Adair's testimony was based on specialized knowledge because the average bystander would be unable to present similar testimony. Finally, we do not consider the State's harmless error argument because it is not before us on certiorari. We accordingly affirm the decision of the court of appeals.

¶ 38 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

---

67.   836 S.W.2d 530, 549 (Tenn.1992).

68.   Fed.R.Evid. 701 advisory committee's note on 2000 amendments (quoting *Brown*, 836 S.W.2d at 549).

69.   748 P.2d 188 (Utah 1987).

70.   *Id.* at 191.

71.   *Id.* at 190.

72.   *Id.* at 191.